In the Matter of DAVID A. FAY, Appellant and Respondent.
In the Matter of GEORGE W. THOMPSON, Respondent.
In the Matter of STEPHEN J. WOJTKOWIAK, Respondent.
THOMAS E. DEWEY, as Governor of the State of New York, et al., Respondents and Appellants.

Argued September 9, 1943; decided November 18, 1943.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd* and *Wendell P. Brown* of counsel), for Thomas E. Dewey, as Governor, et al., respondents and appellants. The existing apportionment of Senate districts is so antiquated and inequitable that elections based thereon have become a travesty on justice. (*People ex rel. Carter* v. *Rice*, 135 N. Y. 473.) The division of the State into fifty-six Senate districts is required by the only construction of the Constitution which carries out the will of the People. The fundamental purpose of the exception clause

in the 1894 Constitution was to prevent the smaller counties from losing senators as a result of gains in the metropolitan counties. (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *Matter of Dowling,* 219 N. Y. 44.) To accomplish the constitutional purpose, and to comply with this court's ruling in the *Dowling* case (219 N. Y. 44), the number of senators which shall be added to the basic number of fifty must be fixed by comparison with the number the county had under the 1894 Constitution. (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185.) The constitutional reference to the number of senators " at the time of any apportionment " does not mean the number *before* the apportionment. (*Matter of Dowling,* 219 N. Y. 44; *Matter of Smith,* 90 Hun, 568; *Nichols* v. *Eveleth,* 204 Minn. 352; *Bridgman* v. *Dove,* 3 Atkyns' English Ch. Rep. 201; *St. John* v. *Andrews Institute,* 117 App. Div. 698, 191 N. Y. 254.) The decision of the Special Term is directly at variance with prior rulings of the Court of Appeals. (*Matter of Dowling,* 219 N. Y. 44.) Even if the Court of Appeals should accept the lower court's interpretation of " having * * * at the time of ", the number of senators should still be fifty-six. The 1943 reapportionment law gave proper effect to the changes in county lines since 1894. (*Matter of Dowling,* 219 N. Y. 44; *People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1; *People ex rel. Boyle* v. *Cruise,* 197 App. Div. 705, 231 N. Y. 639.) There is no inconsistency involved in the apportionment of two senators to Nassau County. (*People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1.) The reapportionment law should not be declared unconstitutional unless it appears beyond reasonable doubt that it is impossible to reconcile its provisions with the intent of the Constitution. (*People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *Brophy* v. *Suffolk County Apportionment Commrs.,* 225 Mass. 124; *Matter of Whitney,* 142 N. Y. 531; *People ex rel. Boyle* v. *Cruise,* 197 App. Div. 705, 231 N. Y. 639; *People ex rel. Everson* v. *Lorillard,* 135 N. Y. 285; *Veazie Bank* v. *Fenno,* 8 Wall. [U. S.] 533; *Matter of O'Brien* v. *Boyle,* 219 N. Y. 195; *People ex rel. Jackson* v. *Potter,* 47 N. Y. 375; *Matter of Reynolds,* 202 N. Y. 430; *Oswego & Syracuse R. R. Co.* v. *State,* 226 N. Y. 351.) The opponents of the bill would defeat the purpose of the exception clause, and deny full compensation to the small counties for the additional senators

allocated to the larger counties. (*Association for the Protection of the Adirondacks* v. *MacDonald*, 253 N. Y. 234; *Matter of Burns*, 155 N. Y. 23; *Matter of Wing* v. *Ryan*, 255 App. Div. 163, 278 N. Y. 710; *Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185; *People ex rel. Carter* v. *Rice*, 135 N. Y. 473.) In determining how many senators to add to the basic number of fifty by reason of additional senators apportioned to large counties, comparison must be made with the apportionment of 1894. (*Matter of Dowling*, 219 N. Y. 44.) The increased senate representation of Queens County required the addition of four senators to the basic number. (*United States* v. *Classic*, 313 U. S. 299.) There is no error in the apportionment of two senators to Nassau County. There is no error in the treatment of Westchester County. There is no violation of the principle of equality.

*David A. Fay*, in person, and *Saul I. Radin* for petitioner David A. Fay, appellant and respondent. In a case brought to test the constitutionality of a reapportionment law, it is the duty of the court to *review* the apportionment. (*People ex rel. Carter* v. *Rice*, 135 N. Y. 473; *Matter of Dowling*, 219 N. Y. 44.) The conclusion urged by petitioner Wojtkowiak, that the number of Senate districts to be formed upon an apportionment based upon the Federal census of 1940, and the tabulation thereof, as prescribed by the Constitution, is fifty-three, is erroneous. (*Klein* v. *Maravelas*, 219 N. Y. 383; *People ex rel. Carter* v. *Rice*, 135 N. Y. 473; *People ex rel. Wood* v. *Draper*, 15 N. Y. 532; *Rohrbach* v. *Germania Fire Ins. Co.*, 62 N. Y. 47; *Matter of Goodman*, 146 N. Y. 284; *Matter of Madden*, 148 N. Y. 136; *Matter of Titus*, 117 App. Div. 621; *Matter of O'Brien*, 117 App. Div. 628; *People ex rel. Cassidy* v. *Whalen*, 189 N. Y. 534.) There is internal inconsistency in the theory of law accepted by the Legislature in enacting chapter 359 of the Laws of 1943. *Matter of Dowling* (219 N. Y. 44) decided but one question regarding the number of Senate districts required to be formed, and that was that the word, " additional," as applied to the counties which had three or more senators in 1894, meant, " additional to the number of senators had by such county in 1894 ". (*Grenada Co. Supervisors* v. *Brogden*, 112 U. S. 268; *People ex rel. Burrows* v. *Supervisors*, 17 N. Y. 235; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *Matter of Gilbert Elevated*

*Ry. Co.,* 70 N. Y. 362; *Matter of New York & Long Island Bridge Co.,* 148 N. Y. 540; *Rumsey* v. *People,* 19 N. Y. 41; *People* v. *Purdy,* 4 Hill 384; *Crane* v. *Bennett,* 177 N. Y. 106; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185.) No increase shall be made in the basic fifty members of which the Constitution requires the Senate always to be composed (except when any county having three or more senators at the time of any apportionment shall be entitled on such ratio to an additional senator or senators), unless the senator or senators on whose account the increment is made are additional to three or more senators. (*Matter of Dowling,* 219 N. Y. 44.) The phrase " at the time of any apportionment ", in the exception clause of the Constitution, refers to the time when, by the application of the prescribed formula in connection with a reapportionment, the number of senators which the counties falling within the provisions of the exception will have, has been ascertained. In an apportionment based upon the Federal census of 1940, and the tabulation thereof, Queens is not a county, " having three or more senators." (*Nichols* v. *Eveleth,* 204 Minn. 352; *Bridgman* v. *Dove,* 3 Atkyns' English Ch. Rep., 201; *St. John* v. *Andrews Institute,* 117 App. Div. 698, 191 N. Y. 254.) The word, " county," as used in the clause, " if any county having three or more senators," et cetera, and in the sentence, " no county shall have four or more senators unless it shall have a full ratio for each senator," means, " county as organized in 1894." (*Matter of Dowling,* 219 N. Y. 44; *People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1; *People ex rel. Wood* v. *Draper,* 15 N. Y. 532; *People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1.) In an apportionment based upon the Federal census of 1940, and the tabulation thereof, the only county having three or more senators and entitled on the ratio to an additional senator or senators, is Kings. Under any possible construction of section 4 of article III of the Constitution, on an apportionment made conformably to the adjudicated cases, and based upon the Federal census of 1940 and the tabulation thereof, the number of Senate districts must be either fifty-two or fifty-four. (*Matter of Dowling,* 219 N. Y. 44.) The second and third senatorial districts (comprising the county of Nassau) formed by chapter 359 of the Laws of 1943 were erected in compliance with the mandatory provisions of sec-

tion 4 of article III of the Constitution. (*People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1.) Westchester is entitled to two, and only two, Senate districts, in an apportionment based upon the figures of the United States census for the year nineteen hundred forty. (*People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185.) The word, " having ", as occurring in the third paragraph of section 4 of article III of the Constitution, means, " having in 1894 ", and the correct number of senate districts to be formed is therefore fifty-two, since Kings is the only one of the counties then having three or more senators that gains on an apportionment based upon the census of 1940, and the tabulation thereof. (*Matter of Sherrill,* 188 N. Y. 185; *Matter of Wing* v. *Ryan,* 255 App. Div. 163, 278 N. Y. 710; *Matter of Bickerton,* 232 N. Y. 1; *Tyrrell* v. *Mayor,* 159 N. Y. 239.) The apportionment of assemblymen among the counties made by chapter 359 of the Laws of 1943 is in conformity with the provisions prescribed by article III of the State Constitution. The apportionment of senators in Senate districts numbers one to twenty-eight, thirty-two, thirty-five, forty-one, forty-three, fifty, fifty-one and fifty-three to fifty-six, is made in accordance with the provisions of the Constitution, and the said districts are constitutional, except as to the numbering thereof. (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *Matter of Reynolds,* 202 N. Y. 430.)

*Pliny W. Williamson,* in person, *Thomas J. Whalen* and *Richard E. Enright* for Pliny W. Williamson, *amicus curiae,* in support of constitutionality of chapter 359 of Laws of 1943. In *Matter of Dowling* (219 N. Y. 44) the Court of Appeals gave an opinion as to the manner of determining the number of Senate districts which, for the Legislature, was authoritative. The Legislature followed strictly the rules thus laid down. The opinion in the *Dowling* case properly interpreted the purpose of the Constitutional Convention of 1894 as to apportionment of the Senate districts. The Legislature determined the number of districts in accordance with the *Dowling* opinion and their distribution in accordance with the opinion in *Matter of Sherrill* (188 N. Y. 185). The *Sherrill* and *Dowling* cases are decisive and presumptively now part of the fundamental case. (*Judd* v.

*Board of Education,* 278 N. Y. 200; *Matter of Smith,* 90 Hun, 568.)

*Fred G. Moritt,* in person, and *Morris Eisenstein* for Fred G. Moritt, *amicus curiae,* in support of constitutionality of chapter 359 of Laws of 1943. A Senate of fifty-six pursuant to chapter 359 of the Laws of 1943 is in accord with the provisions, intent and history of the Constitution of the State of New York. (*Matter of Dowling,* 219 N. Y. 44.)

*Arthur H. Indell* and *Charles J. W. Meisel* for Queens County Bar Association, *amicus curiae,* in support of constitutionality of chapter 359 of Laws of 1943. The procedure followed by the Legislature in formulating the present act was not only efficacious but within constitutional authority. The determination of the court below is unsound. It does not uphold the fundamental purpose of the Constitution and it should not be sustained. (*Matter of Dowling,* 219 N. Y. 44; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *Matter of Burns* v. *Flynn,* 268 N. Y. 601.) The 1943 act should be held fully valid and constitutional and the order appealed from reversed.

*Fred E. Herton, I. Robert Bassin, Victor D. Borst, Jr.,* and *Matthew Mester* for Central Queens Allied Civic Council, Allied Civics of Forest Hills and Vicinity and United Civic Council, *amici curiae,* in support of constitutionality of chapter 359 of Laws of 1943. The Reapportionment Act of 1943, increasing the membership of the State Senate from the number fifty to the number fifty-six is constitutional. (*Matter of Dowling,* 219 N. Y. 44; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185.)

*John J. O'Connor* for George W. Thompson, respondent. The holding of the Special Term that the Act is invalid and unconstitutional because " the total number of Senators should * * * be fifty-three ", and not fifty-six, should be sustained. (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *Colonial City Traction Co.* v. *Kingston City R. R. Co.,* 154 N. Y. 493; *People ex rel. Metropolitan Street Ry. Co.* v. *Tax Commissioners,* 174 N. Y. 417.) The variances in the citizen population of the Senate districts are so great as to violate the provisions of the Constitution as to equality. (*Matter of Smith* v. *Supervisors,*

148 N. Y. 187; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *People ex rel. Carter* v. *Rice,* 135 N. Y. 473.) The apportionment of the Assembly districts is not in accordance with the provisions of the Constitution. (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *Matter of Reynolds,* 202 N. Y. 430; *Matter of Dowling,* 219 N. Y. 44.)

*Henry Epstein* and *Milton Kaplan* for Stephen J. Wojtkowiak, respondent. The application of the constitutional provisions prescribing the method of senatorial apportionment conclusively reveals the invalidity of chapter 359 of the Laws of 1943. (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185; *Matter of Dowling,* 219 N. Y. 44.) Appellants commit the error of including Nassau County in both allotments—in the metropolitan category to add to Queens for their purpose of reaching fifty-six, and then whisking Nassau over to the rural class and noting that Nassau can accommodate two of the secondary ratios. About twenty-two square miles, with approximately 300,000 citizen population by the 1940 Federal census, were taken from Westchester and added to what is now Bronx County in 1895, the year after the 1894 apportionment (L. 1895, ch. 934). If the Westchester of 1894 is to be recreated, this will afford a full three ratios to Westchester. The mandate of section 4 of article III, that Senate districts must attain as exact equality in citizen population as reasonably possible, is violated by the 1943 apportionment. (*Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185.)

LEWIS, J. A challenge to the constitutional validity of the present reapportionment statute of this State (L. 1943, ch. 359) has been sustained at Special Term. That challenge, although varying in minor details, is common to the three proceedings captioned above which have been consolidated and come before us by direct appeal. (Civ. Prac. Act, § 588, subd. 4.)

The question presented is whether the Legislature of 1943 acted within constitutional limitations when it directed the reapportionment of Senate and Assembly districts according to the provisions of chapter 359 of the Laws of 1943.

The inquiry thus required of us must proceed with proper regard for the settled rule that a presumption of constitution-

ality attaches to every statute enacted by the Legislature and " * * * that a statute can be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and that until every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation has been found impossible, the statute will be upheld." (*People ex rel. Henderson* v. *Board of Supervisors,* 147 N. Y. 1, 15, 16; *People ex rel. Carter* v. *Rice,* 135 N. Y. 473, 484, 500, 501; *Matter of Sherrill* v. *O'Brien,* 188 N. Y. 185, 196-199.) In our effort to determine whether the statute in question conforms with the requirements of the Constitution we must give to the latter instrument practical effect, having in mind the purpose of the body which framed it and the people who adopted it. (*Matter of Burns,* 155 N. Y. 23, 30; *Association for the Protection of the Adirondacks* v. *MacDonald,* 253 N. Y. 234, 238.)

The importance to State government of the apportionment of Senate and Assembly districts has given that controversial subject a prominent place in the constitutional and legislative history of this State. In an effort, however, to confine this opinion to facts which relate themselves to the problem presented, we pass the earlier history of apportionment and come at once to the Constitution of 1846 which divided the State into thirty-two Senate districts, but made no provision to adjust Senate representation either to the future growth of the State or to possible future shifts of population from rural to urban districts. In 1846 the citizen population of the State was 2,450,778; in 1892 it had increased to 5,790,865. Although that increase was reflected to some extent in rural districts, the major portion of the increase had been in the cities. It thus came about in 1894 that a marked increase of population in the metropolitan areas caused the Constitutional Convention of that year to propose amendments to the Constitution which were adopted later and are effective today, the interpretation of which will be determinative of this appeal.

The record of the proceedings of the Constitutional Convention of 1894 gives clear proof that when the subject of reapportionment was under consideration the delegates were often reminded of the disparity in size and population between rural and urban Senate districts. They were also reminded that,

under the then existing inflexible constitutional limit of thirty-two Senate districts, any increase in urban representation — which manifestly was due because of the marked gain in urban population — would necessarily cause a corresponding reduction in the representation of rural districts. These suggestions came forth at times when the debates made reference to the underlying constitutional principle in this State that the Legislature should be authorized and directed to reapportion the State at certain intervals and according to a plan by which the Senate and Assembly districts should enjoy, as nearly as might be accomplished, equal representation in proportion to population, excluding aliens. Experience had apparently demonstrated, however, that exact equality in the apportionment of legislative representation on the basis of population was made impossible by practical considerations, some of which were recognized by the Constitution itself — such as the maintenance of county, town and block lines as district boundaries and the preservation of a relation between county autonomy and representative districts. (See *People ex rel. Henderson* v. *Board of Supervisors, supra,* pp. 16, 17.)

In our search to ascertain the purpose of the framers of the constitutional amendments proposed and adopted in 1894, presently to be considered, we gain accurate information from a portion of the " Address to the People " adopted at the close of its session by the Constitutional Convention of that year:

" We have provided for a new apportionment of Senate and Assembly districts, and for that purpose have fixed the number of the Senate at fifty and that of the Assembly at 150.   *   *   *

" Since 1846 the great increase of population in the cities, entitling them to additional representation in the Senate, has required a corresponding decrease in the representation of the country districts, so that those districts have been constantly enlarged and their representation in the Senate has been constantly decreased. The object of the proposed increase is to restore the country districts to substantially the same position in which they were in 1846, and to provide for the increased representation of the cities by the increase in number, so that there will be effective representation of the country as well as of the city districts." (Revised Record, Constitutional Convention of 1894, Vol. IV, pp. 1253-1254.)

The Constitution proposed by the convention of 1894 was adopted by the People. Since that time none of the provisions which establish the fundamental law governing reapportionment of the State has been amended save that provision dealing with the enumeration of inhabitants. That change occurred in 1931 when an amendment was adopted which eliminated from article III, section 4, the provision for a State census, except in certain events there described, and made the Federal census of 1930 and each Federal census taken decennially thereafter the bases for future State reapportionments.

After providing in article III, sections 2 and 3, that Senate districts in the State be increased from thirty-two to a minimum of fifty — which later provision, for the purposes of our present consideration, may properly be treated as having fixed in 1894 the basic number of Senate districts — the Constitution, under article III, section 4, then made provision and still provides for future readjustments and reapportionments of Senate districts by the Legislature. Directions are set forth for the enumeration of inhabitants, and those times are specified when Senate districts shall be " readjusted or altered." Then follow, under the same section, certain limitations upon the performance by the Legislature of the function of reapportionment — limitations which tend to make impossible the attainment of exactitude in reaching equality of representation in the apportionment of Senate districts on the basis of population:

" * * * Such districts shall be so readjusted or altered that each senate district shall contain as nearly as may be an equal number of inhabitants, excluding aliens, and be in as compact form as practicable, and shall remain unaltered until the first year of the next decade as above defined, and shall at all times consist of contiguous territory, and no county shall be divided in the formation of a Senate district except to make two or more Senate districts wholly in such county. No town, and no block in a city inclosed by streets or public ways, shall be divided in the formation of Senate districts; nor shall any district contain a greater excess in population over an adjoining district in the same county, than the population of a town or block therein adjoining such district. Counties, towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens.

" No county shall have four or more senators unless it shall have a full ratio for each senator. No county shall have more than one-third of all the senators; and no two counties or the territory thereof as now organized, which are adjoining counties, or which are separated only by public waters, shall have more than one-half of all the senators."

Finally we reach that paragraph of article III, section 4, the interpretation of which has given rise to the present controversy. That paragraph, as we have seen, is one of the constitutional provisions proposed by the convention of 1894, the " object " of which was declared by that convention to be — " to restore the country districts  *  *  *, and  *  *  * provide for the increased representation of the cities by the increase in number [of districts], so that there will be effective representation of the country as well as of the city districts." That objective was obtained by the following provision: Article III, section 4. " *  *  * The ratio for apportioning Senators shall always be obtained by dividing the number of inhabitants, excluding aliens, by fifty, and the Senate shall always be composed of fifty members, except that if any county having three or more Senators at the time of any apportionment shall be entitled on such ratio to an additional Senator or Senators, such additional Senator or Senators shall be given to such county in addition to the fifty Senators, and the whole number of Senators shall be increased to that extent."

By anticipating a further increase in the urban population the convention of 1894 proved to be prophetic. Between 1894 and 1940 the citizen population of the State increased from 5,790,865 to 12,401,329. The major portion of that increase was in the cities — the City of New York alone having attained in 1940 a population of 6,632,398. In the meantime four reapportionment statutes were enacted by the Legislature, the last within that period being in 1917. (L. 1917, ch. 798; State Law, §§ 120–122.)

We come then to the present reapportionment statute (L. 1943, ch. 359), which has been declared unconstitutional at Special Term. By its enactment the Legislature, in an effort to give effect to the constitutional provisions governing reapportionment, has reapportioned the State into fifty-six Senate districts — a gain of six districts over the basic number of fifty fixed by the Constitution of 1894. We must assume that increase in

Senate representation was adopted after effect was given in good faith to each limitation upon the legislative function of reapportionment found in article III, section 4, of the Constitution. To that end the Legislature pursued the following method by which it determined fifty-six to be the total number of districts into which, under the Constitution, the State might be reapportioned:

According to the Federal census of 1940 the citizen population of the State was 12,401,329. Applying to that figure the divisor fifty (being the minimum number of Senate districts fixed by article III, section 2) gave the quotient 248,027. Having thus found the quotient which is commonly termed the first ratio, and after determining that the five most populous counties — Kings, New York, Bronx, Queens and Erie — were entitled to " three or more Senators," the next requirement was to ascertain the total number of senators to which each of those five counties was entitled. That requirement was met by dividing the citizen population of each of the five counties by the first ratio, thereby producing a quotient in terms of full ratios which, under the Constitution (art. III, § 4), represented the total number of senators to which each of the five counties was entitled, plus an excess appropriate to each equation. This formula, when applied to the five counties mentioned above, produced the following results:

Kings Co. $\dfrac{2,407,484 \text{ (Citizen pop.)}}{248;027 \text{ (First ratio)}} = 9$ full ratios (Senators) $+175,241$ excess

New York Co. $\dfrac{1,615,980 \text{ (Citizen pop.)}}{248,027 \text{ (First ratio)}} = 6$ full ratios (Senators) $+127,818$ excess

Bronx Co. $\dfrac{1,241,269 \text{ (Citizen pop.)}}{248,027 \text{ (First ratio)}} = 5$ full ratios (Senators) $+1,134$ excess

Queens Co. $\dfrac{1,203,752 \text{ (Citizen pop.)}}{248,027 \text{ (First ratio)}} = 4$ full ratios (Senators) $+211,644$ excess

Erie Co. $\dfrac{765,073 \text{ (Citizen pop.)}}{248,027 \text{ (First ratio)}} = 3$ full ratios (Senators) $+20,992$ excess

To determine under article III, section 4, the number of " additional " senators, if any, which should be apportioned to each of the five counties " having three or more Senators at the

time of [the] apportionment," the Legislature compared the total number to which each county was entitled with the number apportioned to each county's territory by the Constitution of 1894. In passing it may be said that it is this comparison which has provoked the chief disagreement between the appellants and respondents and is a subject presently to be considered.

The comparison with the basic apportionment of 1894 adopted by the Legislature served to increase by two the number of senators which should be apportioned to Kings County. When applied to the county of New York, which in 1894 included Bronx County, the comparison warranted a decrease in the number of senators from twelve to eleven. That deduction, however, was not made in the reapportionment because the exception clause in article III, section 4, contained no provision for a decrease in the whole number of senators. In the territory comprising Queens County the citizen population, on the basis of four full ratios, entitled that county to four senators. The comparison with conditions dealt with by the convention of 1894 showed that in that year the territory which then comprised Queens County alone and formed a single district with one senator, now includes Queens and Nassau Counties. Nassau County, by the Federal census of 1940, had a population of 383,266. It thus has one full ratio which entitles it to one senator. By comparing the Queens-Nassau territory of 1943, then entitled to five senators, with the same territory in 1894, to which one senator was then apportioned by the Constitution of that year, the Legislature of 1943 apportioned four additional senators to that Queens-Nassau territory. Erie County, which had three senators in 1894, failed to show an increase sufficient to equal four full ratios and, accordingly, the number of senators to which it is entitled remains three. It is by the above method of computation, whereby Kings and Queens Counties are found to have three or more senators and show gains of two and four senators respectively, that the reapportionment of 1943 increased the whole number of senators to fifty-six.

To complete the reapportionment in the entire State the Legislature applied what is known as a second ratio. (See *Matter of Sherrill* v. *O'Brien, supra,* pp. 208–209.) By the application of the first ratio to the five larger counties having

a total citizen population of 7,233,558, the Legislature has apportioned to those counties, in the manner outlined above, a total of twenty-seven senators. On the basis of full (first) ratios no one of the fifty-seven remaining counties has a citizen population which entitles it to three or more senators. Accordingly, having apportioned twenty-seven senators to the citizen population of 7,233,558 in five counties, and having increased the whole number of senators to fifty-six, the Legislature then apportioned the remaining twenty-nine senators to the remaining fifty-seven counties by dividing the total citizen population of those counties (5,167,771) by twenty-nine (being the number of remaining senators to be apportioned to fifty-seven counties), thus producing a quotient — the second ratio — of 178,199. When the second ratio was applied to the population of each of the fifty-seven remaining counties, it was found that seven of those counties were entitled to one or more senators as follows: Albany, 1; Monroe, 2; Nassau, 2; Oneida, 1; Onondaga, 1; Suffolk, 1; Westchester, 3. A total of eleven senators out of the twenty-nine subject to the second ratio having thus been apportioned to seven counties out of fifty-seven, the balance of eighteen Senators was then apportioned to the fifty counties remaining.

In deciding that the reapportionment statute of 1943 is not consonant with the Constitution, Special Term reached the conclusion that a correct reapportionment upon the present record called for an increase of three in the whole number of senators, thus bringing the membership of the Senate to fifty-three. In doing so the court gave one additional senator to Kings County and two to Bronx County. No gain in the senatorial representation of Queens County was deemed legally justified because, it was ruled, that county was not one of those which had three or more senators before the time of reapportionment. In reaching those conclusions the court construed the clause " any county having three or more Senators at the time of any apportionment " (art. III, § 4), as meaning a county having three or more senators *before* the reapportionment. The court also ruled that — " the number of senators which a county in the class of ' three or more senators at the time of any apportionment ' has after the reapportionment should be compared with the number it had before the reapportionment " (179 Misc.

1062, 1071) — which, we assume, in this instance referred to the reapportionment of 1917. (L. 1917, ch. 798.)

We think the ruling at Special Term failed to heed statements made in the opinion of *Matter of Dowling* (219 N. Y. 44), in which proceeding, as we shall point out, there came before this court for consideration problems substantially the same as those in the present case. In the *Dowling* case cross appeals by all parties had brought to this court an order of the Appellate Division in a proceeding to test the constitutionality of the reapportionment act of 1916. (L. 1916, ch. 373.) For our present purposes it is important to note the text of the order of the Appellate Division, which was then made the subject of review in this court. The Appellate Division order provided:

" It is hereby ordered and adjudged that the order so appealed from be reversed on the law and the apportionment declared invalid in so far as it provides for fifty-one senators and allots two senators instead of one to Westchester County, and valid in all other respects. And it is

" Further ordered and adjudged that the Secretary of State, in sending out his notice of election for the forthcoming General Election, as required by Section 293 of the Election Law shall include and direct in such notice that but one State Senator shall be elected for and from the County of Westchester; and that as to all other Senatorial districts in the State of New York, the notice so to be sent out shall be in accordance with the provisions of Chapter 373 of the Laws of 1916."

The Appellate Division's opinion (174 App. Div. 185) outlined the principal problem considered, by stating — " The Apportionment Act provided for fifty-one Senators. The appellants claim that the total number of Senators should be fifty and not fifty-one." The opinion concludes with the statement — " The orders appealed from should, therefore, be reversed on the law and the apportionment declared invalid in so far as it provides for fifty-one Senators and allots two instead of one to Westchester county, and valid in all other respects." Thereafter, upon appeal to this court, the briefs of counsel placed emphasis upon the issue which had been tendered for decision in the Appellate Division. The brief by the Attorney-General on behalf of the appellants stated — " The question then presented is whether we are to use the constitutional appor-

tionment of 1894 or the legislative apportionment of 1907 as the basis of determining whether an additional Senator in excess of 50 is allowable under the Constitution.'' The second point briefed by counsel for the respondents was captioned '' The Senate should consist of fifty and not fifty-one members, as provided in the Act under review.'' Finally, the opinion of this court (at p. 51) states the first question of law presented by the appeal to have been — '' 1. Upon the facts disclosed by the record, should the senate be composed of fifty, or fifty-one members?''

True it is that in the *Dowling* case this court declared the 1916 apportionment unconstitutional because of an error in the formation of certain designated Senate districts in New York County. It did not reach that decision, however, until it had considered and expressly decided the issue which was determined by the Appellate Division order and presented to this court for review, and which had been denominated by this court as the first of the questions of law presented by the appeal. A statement made by the Supreme Court of the United States in *Railroad Companies* v. *Schutte* (103 U. S. 118, at p. 143), applies here with equal force: '' It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter. Here the precise question was properly presented, fully argued, and elaborately considered in the opinion.'' (See, also, *Union Pacific R. R. Co.* v. *Mason City & Fort Dodge R. R. Co.,* 199 U. S. 160, 166; *United States* v. *Chamberlin,* 219 U. S 250, 262; *Rohrbach* v. *Germania Fire Ins. Co.,* 62 N. Y. 47, 58, 59.)

The following excerpt from the opinion in the *Dowling* case (*supra*) states not only this court's view as to how essential to the issue then *sub judice* was the construction of article III, section 4, of the Constitution, but also gives the court's interpretation of those provisions of the Constitution which were followed by the Legislature in 1943 in reapportioning the Senate and are now in controversy before us (pp. 55–56): '' It is necessary to determine in connection with the provision in the Constitution for ' an additional senator or senators ' some specific time from which the computation must be made to

ascertain whether an additional senator or senators are permitted within its terms. A construction of the language of the Constitution is essential. It should not be given a construction that leads to manifestly unintended results. If the Constitution is construed to mean that the additional senator or senators must be determined in comparison with the number of senators provided by the Constitution itself, the purpose and intent of the People of the State will be carried out. If the number of senators by the ratio is not compared with the number of senators as of the time of the adoption of the Constitution itself the purpose and intent of the people will be frustrated. In the construction of a statutory or constitutional provision a meaning should not be given to words that are the subject of construction that will defeat the purpose and intent of the statutory provision or that will make such provision absurd.

" The words of the Constitution, namely, ' time of any apportionment,' are important to put a limit upon all changes in the number and apportionment of senators. They do not necessarily fix the time from which to compute the number of additional senators, if any, to which a county is entitled. When *at the time of any apportionment* the number of senators by the ratio, as provided, is determined all the counties then entitled to three or more senators are to have the number of senators to which they are so entitled *compared with the number of senators given to such county by the Constitutiton of 1894,* and if by the ratio any county is entitled to an additional senator or senators such additional senator or senators must be given to such county, and the number of senators in the State must be increased accordingly. Such interpretation respects all of the provisions of the Constitution.

" We do not think that the Constitution was violated in dividing the State into fifty-one senate districts." (Emphasis supplied.)

We have not been persuaded that the interpretative statements last quoted above are irrelevant to the decision we are about to make; nor do we agree with counsel for some of the respondents that they contain an erroneous interpretation of provisions of the Constitution which are applicable to the proceeding now before us. We have seen that as an incident to a decision of issues then presented for review, the court, in

the *Dowling* case deemed it — *" necessary to determine* in connection with the provisions in the Constitution for ' an additional senator or senators ' *some specific time from which the computation must be made to ascertain whether an additional senator or senators are permitted within its terms."* (Emphasis supplied.) That problem now comes to us as a submission by all parties and presents the principal question for decision. As in the *Dowling* case the court expressly found " A construction of the language of the Constitution [to be] essential ", so in the case at bar an interpretation is required of the same provisions of the Constitution.

The language employed in article III, section 4, of the Constitution, when considered in the light of constitutional history in this State as it relates to reapportionment, has led us to accept the statement quoted above from the *Dowling* case as containing an authoritative interpretation of the constitutional provisions which are involved in the present proceeding. Accordingly we conclude that, in the process of reapportioning Senate districts in 1943, the Legislature acted in conformity with the constitutional purpose. To that end, after a correct application of the constitutional ratio, it computed the " additional Senator or Senators ", if any, to which " any county having three or more Senators at the time of [the] apportionment " was entitled, by comparing the total number to which each such county was so entitled with the number that had been apportioned to that county's territory by the Constitution of 1894, and by increasing the total number of senators accordingly — any increase over the total Senate membership of 1894 being added to the basic fifty.

Concededly the territories of Queens County and Nassau County in 1894 comprised one district to which one senator was then apportioned. At the time of the 1943 reapportionment the population within that territory, which now comprises Queens and Nassau Counties, had increased to a figure in excess of five full first ratios and thus became entitled to five senators — Queens County having in excess of four full ratios and Nassau having in excess of one full ratio. There was thus a gain of four senators in that territory which, under the Constitution of 1894, was a single district. In the determination of the number of senators to which Nassau and Westchester Counties were

entitled at the time of the 1943 apportionment, the application of the first ratio could not be made because neither county had three or more full (first) ratios. It was in these circumstances that the Legislature used the second ratio applicable only to the reapportionment of those counties in the State which do not have three or more full (first) ratios. By the application of the second ratio to Nassau and Westchester Counties they became entitled to two and three senators respectively. In thus dealing with the problems of readjustment and reapportionment peculiar to Queens, Nassau and Westchester Counties and by applying the ratio, approved by this court in *Matter of Sherrill* v. *O'Brien (supra)*, pp. 208, 209, we think the Legislature has not enacted a statute which " beyond reasonable doubt  *  *  * conflicts with the fundamental law." (*People ex rel. Henderson* v. *Board of Supervisors, supra,* p. 16.)

We have considered also the criticism directed by one of the petitioners to the reapportionment of members of the Assembly — approved at Special Term — and all other matters to which the briefs of counsel direct our attention. Our conclusion is that the reapportionment act of 1943 is in accord with the Constitution.

It follows that the order of the Special Term should be reversed and the petitions dismissed, without costs.

RIPPEY, J. (concurring). Although the decision in *Matter of Dowling* (219 N. Y. 44) was based upon another ground, the rule formulated by Judge CHASE and concurred in by a majority of the judges of this court on the subject of the reapportionment of Senate districts on which reliance is placed in the main opinion here was probably intended by the court as a guide for the Legislature in enacting future reapportionment statutes. Under circumstances appearing in this case, it may not be lightly rejected as *dictum*. Were those circumstances not present, it could have no more force upon later decisions than mere *dictum* in any case.

Grave difficulties arise in an attempt to reconcile the rule so formulated with the language of the Constitution. It is important to note that no bill or resolution for reapportionment applying that rule as now applied in the present Act reached the floor of the Legislature for twenty-five years after that opinion

was written. Yet the Constitutional Convention of 1938 had seriously before it the question of revision of the constitutional provision of 1894 relating to reapportionment, as well as its construction in this court through the *dictum* in the *Dowling* case and made no change and the People ratified the act of the Convention. When the Legislature in 1943 enacted chapter 359, it followed the interpretation of the constitutional provision as announced in the *Dowling* case. Whether that interpretation was correct or incorrect when made, the Legislature was not without justification in following it subsequent to the action of the Constitutional Convention of 1938 and the adoption by the People of the provision of that Constitution relating to reapportionment. In that view of the matter, though with great hesitation, I accept the construction placed upon the language of the Constitution by the majority of this court in the *Dowling* case, and, so far as the rule there formulated can be applied, I concur in the decision that the apportionment of 1943 is valid. As affecting future reapportionment, that rule may be promptly changed by appropriate constitutional amendment if the People so desire.

Problems arising through the change in the territorial boundaries of New York, Queens and Westchester Counties and the creation of the counties of Queens and Nassau since 1894, were not open for decision nor considered in the *Dowling* case and are not affected by it. Nor did the framers of the Constitution provide for the situation thus presented in express terms. However, I cannot say that the statute enacted by the Legislature in treating those problems and other problems presented to it conflicted, beyond reasonable doubt, with the fundamental law.

The order appealed from should be reversed, without costs, and the several petitions dismissed.

LEHMAN, Ch. J., LOUGHRAN, DESMOND and THACHER, JJ., concur with LEWIS, J.; RIPPEY, J., concurs in separate opinion in which CONWAY, J., concurs.

Order reversed, etc.