Michael E. Sweeney, J.
This is a motion brought by the plaintiff pursuant to CPLR 3212 for summary judgment. The defendant cross-moves to dismiss the complaint and for summary judgment on its counterclaim. The action arises out of the breakage retained by plaintiff during its 1965 racing season.
Chapter 567 of the Laws of 1965 amended the Pari-Mutuel Revenue Law (L. 1940, ch. 254) by adding a new article III, entitled “Agriculture and New York State Horse Breeding Davelopment Fund ”, and more particularly amended the exist *592 ing law to provide for an increase in the “ breaks ” from odd cents over any multiple of 5 cents on a dollar to 10 cents. The new statute creates a public benefit corporation known as the Agriculture and New York State Horse Breeding Development Fund within the Harness Racing Commission and provides that 25% of said “ breaks ” collected in each calendar year shall be “paid to the fund by the persons or corporations licensed to conduct pari-mutuel betting at harness racing tracks ” (§ 55-c). It further provides that the Fund shall be administered by the Commissioner of Agriculture and Markets, the Chairman of the Harness Racing Commission and three trustees to be appointed by the Governor (§ 55-a). Chapter 567 was signed into law on July 2, 1965. Section 10 of the law provides: £ £ This act shall take effect immediately and shall apply to all pari-mutuel betting conducted on and after the first Monday after it takes effect.”
The plaintiff collected some $45,000 representing 25% of the breakage at the track conducted by it at Saratoga Springs from July 7,1965 through November 27,1965. Plaintiff contends that since the Governor did not appoint the three trustees to the Fund until after January 1, 1966 it has the right to retain these moneys for its own use and purposes because the Fund was not organized during the calendar year of 1965. Plaintiff further asserts that chapter 567 authorizes and directs that the Fund contribute to the purses of a minimum of six stake events for New York bred horses and since plaintiff conducted such stake events in August of 1965 at a cost of some $20,000, these moneys should be allocated out of the 25% of the breakage collected during 1965. Plaintiff also contends that chapter 567 of the Laws of 1965 is unconstitutional in that it enables the Fund to derive income from pari-mutuel betting in violation of section 9 of article I of the New York State Constitution.
The defendant, on the other hand, contends that as a matter of law the defendant had legal capacity to collect from the plaintiff its statutory 25% of the breakage accrued at plaintiff’s track during 1965 after July 2, 1965 because the Fund came into legal existence, with all its rights, duties and powers, the day the act was signed into law, notwithstanding the fact that it did not have full membership composition until a later date. In its counterclaim, defendant seeks judgment dismissing the plaintiff’s complaint, together with the sum of $45,222.89 representing the 25% of the breakage money accrued at plaintiff’s track during the second half of 1965, together with interest from the 1st day of February, 1966.
*593 If chapter 567 of the Laws of 1965 is unconstitutional, plaintiff’s first two contentions are immaterial, for the law is void and can accomplish nothing. Therefore, it is the latter contention of plaintiff that will be dealt with first.
A legislative enactment is presumed to be constitutionally valid. (Matter of Fay, 291 N. Y. 198, 207.) The courts have held that this is an exceedingly strong presumption and only a clear violation of the Constitution will justify a court in overruling the legislative will. (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 540; Farrington v. Pinckney, 1 N Y 2d 74, 78; 1. L. F. Y. Co. v. Temporary State Housing Rent Comm., 10 N Y 2d 263, 269.) Every intendment is in favor of the statute’s validity and the party alleging unconstitutionality has a heavy burden. (Martin v. State Liq. Auth., 43 Misc 2d 682, 684, affd. upon the opinion rendered at Special Term, 15 N Y 2d 707.) The pertinent part of section 9 of article I of the New York State Constitution provides as follows: “1. No law shall be passed * * * except as hereinafter provided, no lottery or * * other kind of gambling, except pari-mutuel betting on horse races as may be prescribed by the legislature and from which the state shall derive a reasonable revenue for the support of government, shall hereafter be authorized or allowed within this state”. (Emphasis supplied.) Plaintiff urges that the present statute violates the State Constitution in that the proceeds of the Agriculture and New York State Horse Breeding Development Fund are not revenue being used “ for the support of government” as intended by the Constitution.
Pari-mutuel betting was initially permitted by an amendment to the Constitution in 1940. During the next 25 years the number of standard bred tracks increased throughout the eastern part of the United States, and particularly in New York State. The additional tracks, coupled with the increased popularity of harness racing, produced a noticeable impact upon the economy of the State. As a result of the constitutional permission, parimutuel betting at the several tracks in New York has provided large sums of money towards the maintenance of government.
The problem presented here, however, narrows to a determination of whether or not the activities of the Agriculture and New York State Horse Breeding Development Fund are sufficiently allied with the original intent of section 9 of article I of the Constitution as to further its purposes. I must conclude that they are. This method adopted by the State tends to insure an ever-increasing supply of standard bred horses for racing at the New York tracks which must compete with tracks of the neighboring States for an adequate supply of good horses.
*594 The State’s revenue derived from pari-mutuel betting is determined by the amount of money wagered. This to a large extent, depends on the length of the meetings, the attendance at the track and the number of races, together with the number of horses in each race. It seems reasonable that without an adequate supply of good horses, large crowds will not be drawn to the tracks. It also seems reasonable to conclude that if there are more horses and better horses, this will stimulate betting. I must conclude that by designating certain races with attractive purses for New York bred horses, the owners of these horses will be more inclined to keep them running at tracks in New York State and the State will be permitted to compete more favorably with tracks of other States.
To place a more restricted interpretation on this constitutional provision would defeat its purpose. While the conditions that existed at the time of the amendment to the Constitution have changed, and perhaps the tremendous increase in the interest of harness racing was not anticipated at the time, some flexibility must be permitted. The State has an obligation to meet these changing conditions as they arise by means not in contravention of the Constitution itself. This, I feel, the State has done in the instant case, and by providing for this Fund and its activities, the State is protecting its source of revenue for the support of government. I, therefore, conclude that this statute is constitutional.
The Legislature has the right and duty to determine when an act is to take effect. In the case of chapter 567 of the Laws of 1965, it specifically provided that it was to take effect immediately. The fact that three of the trustees were not designated until a later date, I must conclude, is immaterial.
The third point raised by the plaintiff is its right to the sum of some $20,000 which it expended in 1965 for six stake races which it is claimed were held pursuant to this statute. I must conclude, that since the act took effect immediately and the plaintiff track has complied with the statute in setting aside these funds for the benefit of the Agriculture and New York State Horse Breeding Development Fund, the plaintiff should have the benefit of that portion of the statute which mandates the Fund to conduct a minimum of six stake races. This, however, presupposes a full compliance with the statute on the part of plaintiff. Whether or not the plaintiff has complied with the statute, and whether the plaintiff would be entitled to the sum of $20,516.06 or some other figure, are questions of fact and cannot be determined on a motion for summary judgment. *595 I cannot say, as a matter of law, that plaintiff is entitled to nothing.
Plaintiff’s motion for summary judgment is denied. Defendant’s motion for summary judgment is granted to the extent of the difference between $45,222.89 and $20,516.06.