OPINION OF THE COURT
Joseph C. Teresi, J.
This court is in receipt of a notice of motion, filed by proposed intervenor, Courtroom Television Network (Court T.V.), seeking an order (a) permitting Courtroom Television Network to televise the trial in this action and (b) determining that Courtroom Television Network may televise the trial in this action, subject to coverage guidelines set forth in the papers submitted by Courtroom Television Network on the grounds that section 52 of the Civil Rights Law is unconstitutional.
This court has received opposition to this motion from the defendants solely on the ground that it is barred by Civil Rights Law § 52. Defendants do not cite to the court any invasion of the requirement of a fair or impartial trial as a ground to object. An affirmation from the People states that they take no position as to the constitutionality of New York Civil Rights Law § 52. The People submit their support for enabling legislation which would remove the prohibition of section 52. The Attorney General by letter dated January 18, 2000 declined to participate in this proceeding. The court has also received an amicus curiae brief in support of the proposed intervenor’s position from the City of Albany.
Initially, the court will grant the motion to intervene by Courtroom Television Network and consider the motion.
The court takes notice of the decision in this case of Justice Patricia Williams, Bronx County Supreme Court, dated June 4, 1999 (No. 1814/99) which dealt with a similar challenge by WRNN-T.V. Associates, LTD., and Pro Se Views, in which she denied the relief requested. The court also notes the change in circumstances since that decision, namely the change of venue granted in the decision of December 16, 1999 of the Appellate Division, First Department. (People v Boss, 261 AD2d 1 *702 [1st Dept].) The court also notes that the present challenge is under both the Federal and State constitutional rights of the public while the earlier challenge was solely under the New York State Constitution.
Section 52 of the Civil Rights Law, in pertinent part, reads as follows: “No person, firm, association or corporation shall televise, broadcast, take motion pictures or arrange for the televising, broadcasting, or taking of motion pictures within this state of proceedings, in which the testimony of witnesses by subpoena or other compulsory process is or may be taken, conducted by a court, commission, committee, administrative agency or other tribunal in this state.”
This is a per se ban on all audio-visual coverage of trial court proceedings, under all circumstances in any case.
In considering this challenge to the constitutionality of section 52 this court is guided by the principle that all legislative enactments are “supported by a presumption of validity so strong as to demand of those who attack them a demonstration of invalidity beyond a reasonable doubt.” (Matter of Van Berkel v Power, 16 NY2d 37, 40; Lindsley v Natural Carbonic Gas Co., 220 US 61; Matter of Fay, 291 NY 198.) This is accompanied by another presumption that the Legislature has investigated and found the existence of a situation showing or indicating the need or desirability of the legislation (Matter of Van Berkel v Power, 16 NY2d 37, 40; East N. Y. Sav. Bank v Hahn, 293 NY 622, affd 326 US 230). The party challenging the facial constitutionality of a State statute bears a heavy burden of proof (Matter of Wood v Irving, 85 NY2d 238 [1995]). With these considerations in mind, this court will examine section 52.
Section 52 was enacted in 1952 (L 1952, ch 241, § 1) and the history of that statute and its original intent is well documented in movant’s papers. The New York State Legislature in 1987, pursuant to former section 218 of the Judiciary Law, approved an 18-month experiment of audio-visual coverage of civil and criminal trial court proceedings. Through legislative reenactment this was followed by almost 10 years of the use of audiovisual coverage in the courtroom. Those 10 years were accompanied by recommendations from the various mandated reports which recommended that Judiciary Law former § 218 should be permanently enacted. However, on June 30, 1997 audio-visual coverage of trial court proceedings ceased and Civil Rights Law § 52 was automatically revived because the Legislature failed to reenact Judiciary Law former § 218. This *703 occurred despite the reports of Chief Administrative Judge Albert M. Rosenblatt (1989) and Chief Administrator of the Courts Matthew T. Crosson (1991) which recommended permanent adoption of Judiciary Law former § 218. Further analysis by Justice Burton Roberts’ committee created by the Legislature (1994) and Dean John Feerick’s committee (1997) also recommended allowing audio-visual coverage in the courts on a permanent basis. By allowing Judiciary Law former § 218 to sunset, the 1952 statute, Civil Rights Law § 52, once again became the law, and a monument to politically created procrastination and inaction.
In Matter of Clear Channel Communications (Albany County Ct, Mar. 3, 1999, Rosen, J.), a holding adopted by Justice Williams in Matter of Regional News Network (Sup Ct, Bronx County, June 4, 1999, No. 1814/99), the court found that: “CC-CI’s argument against the constitutionality of §521 on free speech and equal protection grounds can only be categorized by this Court as comprehensive and extraordinarily persuasive.”
Judge Rosen went on to state: “This Court cannot help but basically agree that the Holmesian ‘felt necessitates of time’ have not well treated §52’s original intent. It has been powerfully argued, in [CCCI’s] submission, that §52 of the Civil Rights Law is hopelessly anachronistic and needs a permanent shelving, not merely the just completed ten (10) year experimental amendment. This court can hardly envision any serious argument that a rational basis can be crafted to justify what appears to be clear discrimination against the electronic media.” (Supra.)
However, that court reluctantly denied the request to strike down Civil Rights Law § 52 and referred the matter for legislative action. This court respectfully disagrees. If section 52 is no longer constitutional, it is for the courts to say so not to defer to a political body where the nuances of politics can lead and have led to unnecessary inaction.
There is no doubt that the First Amendment of the United States Constitution requires that all criminal trials must be open to the press and public, absent compelling and clearly articulated reasons for closing such proceedings. (Richmond Newspapers v Virginia, 448 US 555, 580 [1980].) It is also true that article I, § 8 of the New York Constitution also insures the right of the press and the public to view court proceedings (O’Neill v Oakgrove Constr., 71 NY2d 521, 529 [1988]). The question is has the time come to recognize a presumptive constitutional right to televise court proceedings.
*704 In Katzman v Victoria’s Secret Catalogue (923 F Supp 580, 589 [SD NY 1996]), the court stated:
“Westmoreland, relied in part on the Supreme Court’s holding in Estes v Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), that the press’ First Amendment right to access to a criminal trial did not include the right to televise that trial. The Estes. Court explicitly recognized that its holding ultimately relied on the then-state of technology, and its statement that ‘when the advances in [technology] permit reporting by . . . television without [the] present hazards to a fair trial, we will have another case.’ 381 U.S. at 540, 85 S.Ct. at 1631.
“Twelve years after the Westmoreland decision and twenty-two years after the Estes holding, the advances in technology and the above-described experiments have demonstrated that the stated objections can readily be addressed and should no longer stand as a bar to a presumptive First Amendment right of the press to televise as well as publish court proceedings, and of the public to view those proceedings on television.” Katzman {supra) was simply another step in the judicial examination begun in 1984 in Westmoreland v Columbia Broadcasting Sys. (752 F2d 16, 23 [2d Cir 1984]), which held that: “There may indeed come a time when the ‘experimentation’ * * * with television coverage establishes that the concerns with expenditure of judicial time on administration and oversight of broadcasting; the necessity of sequestering juries so that they will not look at the television program of the trial itself; the difficulty in empaneling an impartial jury in the case of retrial; the necessity of larger jury panels or increased use of marshals; the psychological effects on witnesses, jurors, lawyers, and judges; and related considerations of ‘solemnity,’ ‘dignity,’ and the like are considered secondary or basically irrelevant as impediments to the search for truth when a given case is televised. At such a time the presumption may well be that all trials should be televised, or televisable.”
In Estes v Texas (381 US 532 [1965], supra) Justice Harlan stated (at 595-596 [concurring opn]): “Finally, we should not be deterred from making the constitutional judgment which this case demands by the prospect that the day may come when television will have become so commonplace an affair in the daily life of the average person as to dissipate all reasonable likelihood that its use in courtrooms may disparage the judicial process. If and when that day arrives the constitutional judgment called for now would of course be subject to reexamination in accordance with the traditional workings of the Due Process Clause.”
*705 It is now the year 2000 and although 48 other States have some form of audio-visual coverage in the courtroom and 37 televise trials, New York has an absolute ban on cameras in the courtroom. This ban arises not from scholarly debate but rather the resurrection of a 1952 statute and the failure of the Legislature to maximize the press and public’s legitimate constitutional access to the courts. This court is not holding there is an unfettered right to televise all aspects of every proceeding. However, this court does find that section 52 of the Civil Rights Law, as an absolute ban on audio-visual coverage in the courtroom, is unconstitutional.
The record produced by movant shows that the 10-year authorized use in this State from 1987 to 1997 with its accompanying reports firmly establishes that the concerns of the Supreme Court and the United States Court of Appeals have been addressed and are no longer a bar to a presumptive- First Amendment right of the press to televise court proceedings, and of the public to view those proceedings on television (see,-Katzman v Victoria’s Secret Catalogue, supra, at 588-589). As a presumptive right exists the per se ban is a barrier to the exercise of basic constitutional rights.
Before this court is a case with great public interest. Were this case to proceed, as it probably will with limited seats for the public and for the press, the rights of the press and public to view court proceedings in another setting would surely be curtailed if not denied. Yet under section 52 this court is denied the ability to remedy this denial of a presumptive right. Under these circumstances the court finds Civil Rights Law § 52 to be unconstitutional.
As the court is striking down Civil Rights Law § 52, standards and safeguards must be utilized for the audio-visual coverage. The court is aware that the movant has generously offered to be bound by its own internal coverage guidelines, also the law and the tolled court rules governing coverage. The court finds that the Rules of the Chief Administrator of the Courts are in place (see, 22 NYCRR part 131 [Audio-Visual Coverage of Judicial Proceedings]). Pursuant to 22 NYCRR 131.1 (b) those rules shall be effective for any period when audio-visual coverage in the trial courts is authorized by the law and shall apply in all counties in the State. This court finds that those rules and procedures shall now apply to any audio-visual coverage of judicial proceedings in New York State.
The court grants Courtroom Television Network’s motion and will allow audio-visual coverage as within the rules above *706 which shall begin with opening statements and follow the established restrictions on coverage. (See, 22 NYCRR 131.7, 131.8.) Court T.V. will provide the only audio-video camera allowed in the courtroom, and it will serve as the pool camera for the broadcast media at large in light of the space constraints in the trial courtroom and will provide access to all interested media representatives to the audio-video feed from that pool camera.
In granting this request, the court has considered all relevant factors including the type of case involved, whether the coverage would cause harm to any participant, the effect on the administration of justice, any possible interference with law enforcement activity, the objections of any of the parties, and the physical structure of the courtroom and installation and operation of equipment without disturbance to the proceedings. (See, 22 NYCRR 131.4 [c].)
The quest for justice in any case must be accomplished under the eyes of the public. The denial of access to the vast majority will accomplish nothing but more divisiveness while the broadcast of the trial will further the interests of justice, enhance public understanding of the judicial system and maintain a high level of public confidence in the judiciary.