OPINION OF THE COURT
Patrick J. McGrath, J.
The Times Union and Clear Channel filed a motion on April *762 26, 2001, seeking permission to be allowed to conduct audiovisual and still photographic coverage of the trial and also subsequent proceedings in the above criminal case. Both requests are based upon the argument that section 52 of the Civil Rights Law is unconstitutional, and assuming, arguendo, that it is not, it should not apply to still photography.
Both the People and defense have not submitted any papers in opposition and take no position on the motion. Section 52 of the Civil Rights Law provides in part that:
“No person, firm, association or corporation shall televise, broadcast, take motion pictures or arrange for the televising, broadcasting, or taking of motion pictures within this state of proceedings, in which the testimony of witnesses by subpoena or other compulsory process is or may be taken, conducted by a court, commission, committee, administrative agency or other tribunal in this state.”
Since there is a strong public policy favoring open courts and public access that is evident from associated case law and legislative history (Press-Enterprise Co. v Superior Ct., 464 US 501; Matter of Associated Press v Bell, 70 NY2d 32, 37), section 52 of the Civil Rights Law should be strictly construed in this context (Matter of Rodriguez v Perales, 86 NY2d 361, 368). In view of the above, this Court agrees with the movant that section 52 of the Civil Rights Law by its express terms does not prohibit still photographic coverage of in-court proceedings. The prohibition only relates to “televising, broadcasting, or taking of motion pictures,” and not still photography. Therefore, the movant’s request to conduct still photographic coverage of all trial and related proceedings is granted.
Next, movant, the owner of WXXA-TV/FOX 23 and WGY/ 810-AM, moves this Court for an order holding that, pursuant to the First Amendment of the United States Constitution and article I, § 8 of the New York State Constitution, WXXA-TV/ FOX 23 and WGY/810-AM are authorized to provide audiovisual coverage of the trial and subsequent proceedings in the above case.
Movant acknowledges that Civil Rights Law § 52 “imposes an absolute, generalized ban on audiovisual coverage of trial court proceedings, no matter what the circumstances of the case or the assessment of the proceeding judge.” And it contends, after lengthy argument with many supporting exhibits, that it is “unconstitutional.”
*763 In support of its contention that Civil Rights Law § 52 is unconstitutional, movant cites two decisions which found the section unconstitutional: People v Boss (182 Misc 2d 700 [Sup Ct, Albany County 2000]); People v Schroedel (Sullivan County Ct 2001).
The Court finds that it has no authority to entertain movant’s motion. “Because [movant] ha[s] no constitutional or statutory right to broadcast, [the court is] without authority to permit [it] to intervene * * * Rather than moving in County Court for an order permitting audiovisual coverage of [the Zwack trial and subsequent proceedings, movant] should have commenced a declaratory judgment action in Supreme Court challenging the constitutionality of the statute * * * (see, People v Langdon, 258 AD2d 937).” (Matter of Santiago v Bristol, 273 AD2d 813, 814 [4th Dept 2000].) Because neither the Appellate Division, Third Department, nor the Court of Appeals have announced a contrary rule, this Court is bound by the Fourth Department ruling. (Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984]; Duffy v Horton Mem. Hosp., 66 NY2d 473.)
In People v Schroedel (supra), the County Court, citing Matter of Clear Channel Communications v Rosen (263 AD2d 663 [3d Dept 1999]), converted the application from a television station for video coverage of a criminal trial into a motion for a declaratory judgment and went on to declare Civil Rights Law § 52 unconstitutional.
But the County Court misread the Rosen case. In the latter case, the appellate court said it had the authority to convert a CPLR article 78 petition into a proceeding for a declaratory judgment, citing CPLR 103. Nowhere in Rosen does it say a County Court has that right. Nor has movant supplied the court with such authority.
“CPLR 3001 confers the power to render a declaratory judgment on only the supreme court, thereby excluding, as a general matter, all other courts of original jurisdiction from entertaining this category of action. Unless there is some other provision conferring declaratory jurisdiction on the particular court, therefore, the court will not have it.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3001:20, at 448; see also Blumberg v Blumberg, 117 NYS2d 906, 909 [Rockland County Ct 1952] [“It is questionable that the County Court has jurisdiction to make a declaratory judgment”], affd 280 App Div 986 [2d Dept 1952].) This Court has discovered no “other provision conferring declaratory jurisdiction” on it.
*764 Based on all of the above, the Court respectfully disagrees with the County Court’s decision in People v Schroedel, wherein that court converted an application into a motion for a declaratory judgment. The Court finds that it has no legal right to take that action.
Therefore, movant’s motion is denied in its entirety, with prejudice. (Matter of Santiago v Bristol, supra.)
The Court would note that its denial of the movant’s request for audiovisual coverage relates only to subpoenaed testimony of witnesses and to no other portion of the trial. When Governor Dewey approved the ban on television cameras contained in section 52 of the Civil Rights Law he stated, “It is basic to our concept of justice that a witness compelled to testify [emphasis added] have a fair opportunity to present his testimony.” (Governor’s Mem approving L 1952, ch 241,1952 NY Legis Ann, at 366.) If testimony is to be given by nonsubpoenaed witnesses, then audiovisual coverage is not precluded by section 52 of the Civil Rights Law. This strict interpretation of section 52 of the Civil Rights Law is in harmony with the strong public policy favoring open courts and public access.
The Court is aware that the language, “or may be taken,” in Civil Rights Law § 52 could lead one to reach a different conclusion (see Coleman v O’Shea, 184 Misc 2d 238, 240). It is obvious that in every trial subpoenaed testimony may or may not be taken. However, the statute was passed to protect those who were forced, “by subpoena or other compulsory process,” to testify. To extend the ban to all court situations where compulsory process may force someone to testify is, in effect, to expand the section to cover all trials, which flies in the face of the public policy favoring open courts and public access. If the Legislature meant to close all trials to televising, etc., it could easily have stated that in the statute. It did not do so.
“The letter of a statute is not to be slavishly followed when it leads away from the true intent and purpose of the Legislature [as described above by the Court] or leads to conclusions inconsistent with the general purpose of the statute or to consequences irreconcilable with its spirit and reason; and statutes are not to be read with literalness that destroys meaning, intention, purpose or beneficial end for which the statute has been designed.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 111, at 226-227.)
Moreover, “In the interpretation of penal statutes [of which section 52 is one, a violation of which is a misdemeanor], which *765 generally receive a strict interpretation, it is considered a sound doctrine to restrict their application to cases which are within the spirit of the law as well as within the letter.” {Id., at 233.)