Edwabd S. Conway, J.
These two proceedings were heard at Special Term on the 8th day of February, 1972 by this court as one consolidated proceeding. The proceedings are for a review of the present apportionment and districting of the State into Senate and Assembly districts as made by chapter 11 of the Laws of 1972 and that the said apportionment be adjudged unconstitutional and void, and that this court direct that a constitutionally valid plan of apportionment be enacted on or before a date to be fixed by this court 30 days after service of a copy of the order of this court and that the respondents named, their agents and employees, be temporarily and permanently directed to treat said law and the apportionment and districting of the Senate and Assembly districts thereunder as void and of no effect.
It is the contention of the petitioners that the review should be made pursuant to the provisions of section 5 of article III of the Constitution of the State of New York and chapter 773 of the Laws of 1911.
The respondents, Nelson A. Rockefeller, Louis J. Lefkowitz, Earl Brydges and Perry B. Duryea, made motions pursuant to CPLR 2215 for an order pursuant to CPLR 3211 (subd. [a], par. 7) and CPLR 3211 (subd. [c]) and CPLR 3212 (subd. [a]) adjudging chapter 11 of the Laws of 1972 to be constitutional and valid and dismissing the petitions herein.
The petitioner Michael W. Schwartz also seeks an order requiring respondents Lefkowitz, Wilson and Duryea to comply with a notice for discovery and inspection pursuant to the provision of CPLR 3101 et seq. (including CPLR 3120) of the following documents:
(1) an engrossed copy of the bill enacting chapter 11 of the Laws of 1972 of the State of New York;
(2) any tabulations of the 1970 Federal Census populations for the Senate and Assembly districts of the State of New York *871 established in 1966 by the Judicial Commission and approved by the Court of Appeals;
(3) all 1970 Federal Census population data and accompanying maps which were used by the Joint Legislative Committee on Apportionment of the Legislature of the State of New York in drawing, or which show the district lines for the Senate and Assembly districts established by chapter 11 of the Laws of 1972;
(4) the opinion of the Attorney-General of the State of New York given, on information and belief, to the Governor of the State of New York commenting on the constitutionality of chapter 11 of the Laws of 1972.
• Such discovery to be made at the office of the respondent Lefkowitz at 80 Centre Street, City of New York.
The respondent moved for a protective order denying the petitioner discovery of the opinion of the Attorney-General of the State of New York to the Governor of the State of New York on the grounds that the material demanded is unqualifiedly privileged as (1) a confidential communication between attorney and client and (2) as an exercise of governmental privilege.
It is the contention,of the petitioners that:
(1) the districts established by chapter 11 are not in compliance with sections 4 and 5 of article III of the New York State Constitution;
(2) the question of partisan gerrymandering is justiciable and the act is unconstitutional under the Fourteenth Amendment of the United States Constitution;
(3) the respondents ’ motion for summary judgment should not be granted, as triable issues of fact have been shown to exist;
(4) Chapter 11 wrongly fixes the size of the Senate at 60 members in violation of sections 3 and 4 of article III of the State Constitution;
(5) Chapter 11 is invalid because it was passed without first having been on the desks of the members of the Legislature for three days, as required by section 14 of article III of the State Constitution ;
(6) on the information presently available, chapter 11 appears to be in violation of section 4 of article III of the State Constitution, because it is not based on final, corrected Federal Census data.
The real issue before this court is the validity, under the Constitution of the State of New York, of chapter 11 of the Laws of 1972 for reapportionment of the State Legislature. The validity of the act under the Constitution of the United States is admitted and is not challenged and therefore is not for me to determine.
*872 The Court of Appeals of the State in Matter of Orans (15 N Y 2d 339, 348): “ Summing up as to the impact on New York apportionment of Reynolds v. Sims and WMCA v. Simon (Lomenzo), we say that the Federal tribunals invalidated New York’s legislative apportionment laws because of these factors only: the distribution to underpopulated counties of a large number of Assembly seats without regard to population, plus the ratios provided for Senate seats, both producing the result that neither House was apportioned so as to result in a ‘ one man, one vote ’ districting. ’ ’
The court went on (p. 349) to say: “ There was left then for the New York State courts in the present proceedings this question: are any of the provisions of article III of our State Constitution, in addition to those directly passed on by the Federal courts in the WMCA case, in ‘ unavoidable conflict with the Fourteenth Amendment ’ (equal protection clause) of the Federal Constitution? More specifically and pointedly the question is: how much of article III necessarily falls? No one doubts that, absent ‘ unavoidable conflict ’ with Federal constitutional law as expressed in Reynolds v. Sims and WMCA v. Simon, our article III as enacted by the people of New York State not only subsists but is controlling on the Legislature in passing any reapportionment redistricting laws.”
The court further said (p. 350): “ We could put a period to this opinion at this point but we are aware that an affirmance here produces pressing necessity for new legislation. The court should not refrain from giving such guidance as is appropriate for the enactment of a new apportionment-districting act.”
Then the Court of Appeals established guidance set forth (pp. 351-352) as follows: “ What other parts, if any, of sections 3, 4 and 5 of article III remain binding? First taking up section 5, the unconstitutionality found by the United States Supreme Court relates almost entirely to the second paragraph of that section and to the provision in the first paragraph that each county no matter how small shall have an Assembly member. We see no reason why the balance of section 5 should not be obeyed, especially its requirement that Assembly districts be ‘ compact * # * convenient and contiguous ’, and including so far as possible all the other directions in the fourth paragraph of section 5. Section 3 of article III of the Constitution, insofar as it delimits the Senate districts, is completely void. Of course, also, the apportionment and locating of Senate districts by the 1964 *873 statutes fall with the invalidated Assembly districting in the same 1964 statutes since the Constitution (art. Ill, § 5) says that the apportionment of Assembly districts and Senate districts must be ‘ by the same law ’. The third paragraph of section 4 which permits the increase of State Senate districts above 50 is still alive (see Matter of Fay, 291 N. Y. 198) except, of course, that it too is subject to the requirement that districts must be substantially equal in population. The long full paragraph at the beginning seems still to be applicable except possibly the prohibitions in its last two sentences which should, however, be respected if it be mathematically possible so to do and still obey the ‘ one man, one vote ’ basic rule.
“ The districting outlawed by the United States Supreme Court as well as all former districtings of this State use the county as the basic unit into which both Assembly and Senate districts are molded, ‘but it is patent that under the new rules the integrity of all the counties in these respects cannot be complete. This means not only that it will be impossible to give each county at least one full Assembly district but also that the boundaries of districts cannot in all instances be co-terminal with county borders. Also, the fourth paragraph of section 5 of article III giving local legislatures the power to draw Assembly district lines in counties having more than one Assembly district must go by the board, since in some instances part of an Assembly district will have to be in one county and part in another. However, the historic and traditional significance of counties in the districting process should be continued where and as far as possible.”
As to petitioners ’ first contention, the attack upon chapter 11 of the Laws of 1972 is merely made in general allegations such as: “ The districting established by Chapter 11 represents a wholesale abandonment of county lines as district boundaries. The extent of that departure is apparent on the face of the Interim Report of the Joint Legislative Committee in its descriptions of the districts proposed, and of course appears from the maps accompanying that report. For the convenience of the Court a tabulation of districts involving fragments of counties appears in paragraphs 5 and 7 of the Affidavit of David I. Wells annexed to the Petition. To summarize what is said there the Chapter 11 Senate establishes 26 districts (out of a total of 60), affecting 19 counties, which consist of a part of one county and a part or parts of one or more other counties. None of these districts is in compliance with the text of Article HI of the State Constitution, which absolutely precludes the segmentation of *874 counties in the formation of Senate districts except to create two or more districts wholly within the same county. The Chapter 11 Assembly shows the same departure from the State Constitution: 31 districts, involving 32 counties (more than half), are composed of a part or all of one county and a part or parts of others. Under Article III, Section 5, no such district is permitted: Assembly districts must consist either of an entire county or of a portion of a single county. Viewed against the text of Article III, Sections 3-5 of the State Constitution, Chapter 11 is invalid on a grand scale. Fifty-seven of the 210 districts created fail to comply with the State rules prohibiting the fragmenting of counties. An additional district, the proposed 95th Assembly District, is invalid because it is based upon the division of the Town of Ramapo which has a population substantially less than a ratio of apportionment: this division is in violation of Article III, Section 5. Prima facie, therefore, Chapter 11 is plainly unconstitutional and invalid.”
This court must take judicial notice of the fact that New York State is one of the oddest shaped States in the United States. The court must also acknowledge the fact that the political subdivisions of the State, the counties, towns and cities, also have odd shapes and sizes caused by many and various factors such as coast line, rivers, lakes and mountains. We have a State that defies a uniform physical subdivision. We also have a large population that is forever shifting due to industrial relocations, urban renewal, public housing projects, relocation of highways and the population expansion requiring the establishment of new residential developments in new areas. Therefore, the Legislature must deal with one of the most difficult “ jig-saw ” puzzles in the world. Not only are there 210 Senate and Assembly districts or “ pieces ” to the puzzle, but they change in size and shape after each census. It is the job of the Legislature to adjust the pieces every time the Federal Census figures become available and then try to put it together again. The Legislature must keep each Senate and Assembly “ piece ” as nearly the same exact population as is possible and yet make it fit without creating any arbitrary adjustments that offend race, creed or national origin standards, nor violating the State Constitution any more than is required by the ‘ ‘ one man, one vote ’ ’ Federal constitutional standard.
It is the opinion of this court that petitioners ’ allegations and conclusions do not make a prima facie showing of failure to comply with subsisting provisions of article III of the New York *875 State Constitution, for it makes no showing that the historic and traditional significance of counties and towns in the districting process was not continued where and as far as possible.
As to petitioners’ second contention, the petitioners contend that the more important question, and the principal aspect of the constitutional requirements raised by the districts established by chapter 11 is the issue of “ compactness ” and, in addition where Assembly districts are concerned, the obviously related standard of ‘ ‘ convenience ’ ’. The attack on chapter 11 on this point is set forth in petitioner Schwartz’ memorandum of law as pages 48 and 49 as follows:

Summary

“ The issues presented by the provisions requiring compactness, convenience and contiguity do not require the court to launch itself into the political arena without objective guidelines. ‘ Compactness ’ has an objective content, even if not strictly governed by theorems of Euclidean geometry. ‘ Convenience ’ also has objective elements. The cases have suggested what they are: topography, lines of communication, habitual associations, prior traditions and prior lines. This suggests that where there are no legitimate factors, such as dramatic population changes, which justify radical changes in existing district lines, wholesale dismemberment of districts, as for example, in the Assembly Districts in Nassau County established by Chapter 11, becomes particularly suspect. In all of this there are available objective measures. If districts conform to these requirements, that is the end of the judicial inquiry.
‘ ‘ However, if, as in the present case, many districts do not conform to them, a court is justified in inquiring further as to the possibility of a forbidden political motive underlying the districting. This further inquiry need not entail examination of legislators at trial. If the legislature has approached the task of districting in a properly responsible and responsive manner, there should be no shortage of records on which to determine whether the deviations from the standards of compactness, contiguity and convenience are justified. These might include the records of public hearings, committee proceedings, legislative debate and so on.
‘ ‘ If, on the other hand, there is no adequate legislative record on which to appraise the possible justifications for deviations from the requirements of compactness, contiguity and convenience, the fault lies with the legislature itself, which had not only the opportunity, but the duty, to make such a record. Indeed, *876 that is the situation in the case at bar. There is no ‘ legislative history ’ in any usual sense. The data upon which the Committee worked is not available to the public; the actual reasons for the existence of the lines as they run, rather than as they might have run, are nowhere disclosed. No hearings on the bill have been held in the Legislature.
“ In these circumstances, where no justifications for the deviations appear in the legislative record, the court is obliged either to declare the districting unconstitutional under sections 4 and 5 of Article III, or to inquire directly of the legislators as to their reasons for the deviations.”
It is the opinion of this court that such allegations and conclusions do not make a prima facie showing of failure to comply with subsisting provisions of article III of the New York State Constitution.
The petitioners ’ contention that ‘ ‘ gerrymandering ’ ’ is justiciable is in the opinion of this court not well taken but in no event would the mere argument that it is justiciable make a prima facie showing of failure to comply with article III of the New York State Constitution. The mere statement that chapter 11 shows numerous examples of districts drawn to minimize the votes of some and maximize the votes of others in violation of the Fourteenth Amendment of the United States Constitution raises no questions of fact. The strong bipartisan support that chapter 11 received in both houses of the Legislature removes even the suspicion attempted to be raised by the petitioners of political “ partisan gerrymandering ”.
The only remaining serious contention of the petitioners, in the opinion of this court, is the contention that chapter 11 wrongly fixes the size of the Senate at 60 members in violation of sections 3 and 4 of article III of the State Constitution.
On this point, it is the contention of the respondents that the procedure followed by the Legislature in arriving at a Senate of 60 members in chapter 11, is in compliance with the last definitive ruling on the question by the Court of Appeals in Matter of Fay (291 N. Y. 198 [1943]). This court agrees with this contention of the respondents.
This court is of the opinion that chapter 11 of the Laws of 1972 is in accord with the Constitution of the United States and with all of the subsisting provisions of article III of the New York State Constitution, and therefore dismisses the petitions in both proceedings and grants summary judgment declaring and acknowledging that chapter 11 of the Laws of 1972 is a Valid and constitutional apportionment statute.