OPINION OF THE COURT
Chief Judge Wachtler.
On March 9, 1992, the New York State Legislature voted to adopt a redistricting plan for the Senate and the Assembly (Senate Bill S 7280). On May 4, 1992, the Governor signed the plan, as approved and later amended, into law (L 1992, ohs 76, 77, 78). Within days, two separate challenges to the redistricting plan were mounted in State court, pursuant to article III, § 5 of the State Constitution and section 4221 of McKinney’s Unconsolidated Laws of NY (L 1911, ch 773, § 1). The first of these, Wolpoff v Cuomo, was commenced by order to show cause filed in Supreme Court, Bronx County, on or about May 8, 1992. Petitioners, four residents and registered voters of Bronx County, claimed that the plan for redistricting the Senate violated article III, § 4 of the State Constitution. Petitioners alleged that the Senate redistricting plan unconstitutionally fragments Bronx County into six separate Senate districts, only two of which are contained wholly within Bronx County, despite the fact that by virtue of population, Bronx County could support four wholly self-contained Senate districts.
*76 The second action, Dixon v Cuomo, was commenced in Supreme Court, New York County, by order to show cause filed on or about May 18, 1992. Petitioners, nine registered voters residing in proposed Senate districts throughout the State, similarly alleged violations of article III, § 4 of the State Constitution. In their petition, they contended that the Senate redistricting plan "is a rank partisan and personal-interest gerrymander” that unnecessarily fragments counties throughout the State and creates districts that are neither compact nor contiguous.
In Wolpoff, the Senate Majority Leader, a named party, had the case removed to Federal court pursuant to 28 USC § 1443 (2). The United States District Court, Southern District of New York, however, sent the case back to State court (Wolpoff v Cuomo, 792 F Supp 964). Appeal of this remand order to the United States Court of Appeals for the Second Circuit is set for the week of July 13,1992. A temporary stay of the remand order expired on June 9, and oral argument was heard on the petition in Supreme Court, Bronx County, on June 12. That afternoon, the State court struck down the Senate redistricting plan as violative of the State Constitution in that it "excessively, gratuitously and without supervening need dictated by federal law, disregards the integrity of county boundaries in the creation of Senatorial districts.” The court struck down the Assembly plan as well, based on the requirement in article III, § 5 that the Senate and the Assembly be redistricted by the same law.
Meanwhile, the Majority Leader, who was not a named party in Dixon v Cuomo, moved to intervene in that case and his request was granted, but was conditioned upon his agreement not to seek removal of the case to Federal court. On June 15, Supreme Court, New York County, having considered the arguments in Dixon v Cuomo, similarly declared the redistricting plan unconstitutional.
The Majority Leader appealed pursuant to CPLR 5601 (b) (2). In addition, the Assembly Speaker has filed a direct appeal challenging the decision in Wolpoff to invalidate the Assembly plan along with the Senate plan, even though the Assembly plan had not been challenged.
In the interim, a three-Judge Federal court issued its Per Curiam opinion, acknowledging its "independent obligation” in such matters, but also declaring that it was "fully cognizant of the primacy of the state legislature and state judi *77 clary” in redistricting (Fund for Accurate & Informed Representation v Weprin, US Dist Ct, ND NY, June 19, 1992).
We begin our analysis by turning to the constitutional provision implicated by this litigation. Article III, §4 of the State Constitution states that "each senate district shall contain as nearly as may be an equal number of inhabitants, excluding aliens, and be in as compact form as practicable, and * * * shall at all times consist of contiguous territory, and no county shall be divided in the formation of a senate district except to make two or more senate districts wholly in such county.”
In Matter of Orans (15 NY2d 339), we considered the continued vitality of article III, §4 in light of the United States Supreme Court decisions in Reynolds v Sims (377 US 533) and related cases, in which the Court had held that both houses of a State Legislature, by virtue of the Equal Protection Clause of the Fourteenth Amendment, must be apportioned substantially on an equal population basis. We recognized in that case that redistricting plans could no longer be based solely upon county lines without running afoul of Reynolds v Sims, and that "the integrity of all the counties in these respects cannot be complete” (Matter of Orans, supra, at 351). We stated at that time, however, that "the historic and traditional significance of counties in the districting process should be continued where and as far as possible” (id., at 352).
Redistricting plans must also comply with the requirements of the Federal Voting Rights Act (42 USC § 1973 et seq.). 42 USC § 1973 (b) specifically provides that a voting rights violation occurs if "based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State * * * are not equally open to participation by members of a [protected] class of citizens * * * in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.” It should be noted that the Senate redistricting plan at issue in this case was reviewed for compliance with the Voting Rights Act by the United States Department of Justice and was subsequently approved.
The issue before us on these appeals is not whether the Senate redistricting plan technically violates the express language of the State Constitution. No one disputes that such a technical violation has occurred, and in Matter of Orans, we recognized that such violations were inevitable if the Legisla *78 turc was to comply with Federal constitutional requirements. Indeed, each of the four alternative plans submitted by the petitioners technically violates the State Constitution as well. Rather, we examine the balance struck by the Legislature in its effort to harmonize competing Federal and State requirements. The test is whether the Legislature has "unduly departed” from the State Constitution’s requirements regarding contiguity, compactness and integrity of counties (Matter of Schneider v Rockefeller, 31 NY2d 420, 429) in its compliance with Federal mandates. "[I]t is not our function to determine whether a plan can be worked out that is superior to that set up by [the Legislature]. Our duty is, rather, to determine whether the legislative plan substantially complies with the Federal and State Constitutions” (id., at 427). A strong presumption of constitutionality attaches to the redistricting plan and we will upset the balance struck by the Legislature and declare the plan unconstitutional " 'only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and that until every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation has been found impossible’ ” (Matter of Fay, 291 NY 198, 207).
This is no simple endeavor. We first address petitioners’ concerns regarding the integrity of counties. An examination of the redistricting plan reveals the following: 28 Senate districts out of 61 cross county lines; 11 minor counties and 12 major counties are divided. For purposes of the current plan, a minor county has fewer than 294,925 citizens, which is the figure obtained by dividing the State’s citizen population (17,990,455) by the number of Senate seats (61). Further, and apparently for the first time in State history, there are four pairs of bi-county districts. Thus, two separate Senate districts cross the county line between Nassau County and Suffolk County, another two districts cross between Bronx County and New York County, another two between Bronx County and Westchester County and another two between Orange County and Ulster County. We note that the plan challenged here is not markedly different from the plan upheld in Schneider, (supra). In Schneider, 26 out of 60 Senate districts crossed county lines, splitting 9 minor counties and 10 major counties.
The Majority Leader has marshaled a considerable amount of statistical and demographic data to support his contention that these districts were drawn in a "good faith effort” (Matter of Schneider v Rockefeller, supra, at 428) to comply with *79 Reynolds v Sims and the Voting Rights Act and not for partisan political reasons, as petitioners argue. In support of his argument that the Legislature’s motives were benign, he points to the fact that for purposes of the United States Supreme Court equal population mandates, the Senate plan has a maximum population deviation of 4.29% from the ideal, which is well below the 16.4% deviation held acceptable by the United States Supreme Court in Mahan v Howell (410 US 315).
Petitioners, by contrast, have submitted four alternative plans, all of which have higher population deviations, but all of which divide fewer counties. In addition, none of the proffered alternative plans create pairs of bi-county districts, as does the current plan. Petitioners contend that the Legislature could have drafted a plan that had a higher, but still acceptable, population deviation and thereby done less damage to the integrity of county lines.
We are not here to determine whether the Legislature complied with the Federal Voting Rights Act. The Justice Department has already determined that the plan meets Federal requirements in that regard. Nor is it our role to assess the equal population deviations contained in the plans before us and determine which plan best balances Federal equal population and State constitutional directives. We are here to decide whether in complying with Federal mandates, the Legislature unduly undermined article III, § 4 of the State Constitution. That an alternative plan might have been devised that conflicted less with article III, § 4 but did greater violence to the equal representation principle is no basis for rejecting the Senate plan. Further, we cannot focus solely on the challenged districts and ignore the fact that a redistricting plan must form an integrated whole.
Balancing the myriad requirements imposed by both the State and the Federal Constitution is a function entrusted to the Legislature. It is not the role of this, or indeed any, court to second-guess the determinations of the Legislature, the elective representatives of the people, in this regard. We are hesitant to substitute our own determination for that of the Legislature even if we would have struck a slightly different balance on our own. Having considered the competing demographic and statistical data submitted by all of the parties in these cases, we find that the petitioners have not overcome the presumption of constitutionality that attaches to the redistricting plan.
*80 Notwithstanding the technical deficiencies of the Senate redistricting plan, we find that respondent has put forth more than enough evidence to support his argument that any such violation was minimized and that the district lines were drawn as they were in order to comply with Federal statutory and constitutional requirements. The Senate plan indeed compromises the integrity of 23 counties, as petitioners have noted. But respondent has countered petitioners’ allegations with a detailed defense of the proposed plan that is grounded in a complex analysis of population trends and voting patterns, and the way in which both must be accommodated in order to comply with Federal requirements. Although we are troubled by the number of divided counties in the new plan and by the four bi-county pairings, it is not appropriate for us to substitute our evaluation of the relevant statistical data for that of the Legislature. We are satisfied that in balancing State and Federal requirements, the respondent has complied with the State Constitution as far as practicable, and we cannot conclude on this record that the Legislature acted in bad faith in approving this redistricting plan. Having made that determination, our review is ended (Matter of Schneider v Rockefeller, supra, at 428-429).
We have considered the petitioners’ compactness and contiguity claims, and we find them to be without merit. Accordingly, in each case, the judgment of Supreme Court should be reversed, without costs, the petition dismissed, and judgment granted declaring chapters 76, 77 and 78 of the Laws of 1992 constitutional.