OPINION OF THE COURT
Richard F. Braun, J.
This is a special proceeding, pursuant to McKinney’s Unconsolidated Laws of NY § 4221 (L 1911, ch 773, § 1), brought by citizens of the State of New York, including New York State Senator Martin Malavé Dilan, seeking a review of the reapportionment of the New York State Senate. Such a reapportionment is required every 10 years, after the federal census occurs. Petitioners are suing for declaratory and injunctive relief barring respondents from enforcing the amendment to State Law § 123 increasing the size of the New York Senate to 63 districts. Petitioners contend that the 63 district plan is contrary to article III, § 4 of the New York Constitution, which sets the formula for increasing the number of State Senate districts based upon population growth. Petitioners assert that the Legislature failed to apply the formula consistently, rationally, and in good faith. Respondents are the Governor of the State of New York, Andrew M. Cuomo; the Lieutenant Governor, who is also President of the State Senate, Robert J. Duffy;[1] Senate Majority Leader and President Pro Tempore of the Senate, Dean G. Skelos (Skelos); Speaker of the Assembly, Sheldon Silver; and the New York State Board of Elections.[2]
The New York Constitution of 1894 created a 50 seat State Senate. The formula in article III, § 4 of the New York Constitution adjusts the size of the State Senate to account for any county population growth as found in each decennial census. The process involves determining the ratio of the populations of the state’s most populous counties to 1/50 of the state’s total *432 population, dropping any remainder, and comparing that number to the number of State Senate seats in those counties in 1894, when the constitutional provision was first enacted.[3] Said another way, article III, § 4 requires that the state’s population pursuant to the most recent census be divided by 50, the number of senatorial districts in 1894. The resulting quotient is known as the ratio for the year. The current population of each county with three or more Senate districts — with 6% or more of the state’s population — is then divided by the ratio for the year. Then any remainder is dropped. The resulting “full ratio” is then compared to the number of State Senate districts that such counties contained in 1894 (see Matter of Schneider v Rockefeller, 31 NY2d 420, 432 [1972]). If a county’s current number of full ratios is greater than the number of Senate districts that the county contained in 1894, then the size of the Senate is increased by the difference between those two numbers. If there are fewer full ratios for a county, then the number of Senate seats for the county remains the same as in 1894. However, because certain counties did not exist in 1894 and because certain 1894 Senate districts were comprised of more than one county, the calculation necessarily requires that certain counties be combined. (Id. at 432-434.)
Article III, § 4 is silent as to that process. Over the years, two methods have been used to combine such counties. One is to divide the most recent federal census population of each such county by the ratio for the year, round down the two quotients, and then combine them (“rounding down before combining”) (see Matter of Schneider v Rockefeller, 31 NY2d at 432). The other is to add together the population of the counties, divide by the ratio for the year, and then round down (“combining before rounding down”). (Id.) The two different methods were used on and off through the decades. In Matter of Schneider v Rockefeller (31 NY2d at 432-433), when faced with a challenge to a switch from the rounding down before combining method to the combining before rounding down method, the Court of Appeals explained:
“Concededly, in previous apportionments the procedure was to aggregate whole ratios for counties that had been divided after 1894. (See, e.g., Matter of Fay, 291 N. Y. 198; cf. Matter of Orans, 17A N Y 2d *433 11, 12.) We discern, however no authority according constitutional stature to this method of computation. Rather, in our view, the Legislature must be accorded some flexibility in working out the opaque intricacies of the constitutional formula for readjusting the size of the Senate. Moreover, where a county has been divided after 1894, the system employed by the Legislature in this case more accurately reflects increases in the population of the territory of the original county — the very basis from which adjustments to the whole number of senators is made. This system is, therefore, consonant with the broad historical objectives underlying the provision for increasing the size of the Senate.” (Citations omitted.)
This year the Legislature used both methods with respect to different county pairs. The most recent federal census populations of Queens and Nassau Counties, which were one county in 1894 (Queens), were each divided by the ratio for the year, and the quotients rounded down separately and then combined (rounding down before combining).[4] The total most recent federal census populations of Richmond and Suffolk Counties, which were separate counties but comprised a single State Senate district in 1894, were added together before dividing by the ratio for the year, and the quotient was then rounded down to determine the full ratio (combining before rounding down).[5] Petitioners contend that this inconsistent approach, which *434 yielded an increase from 62 to 63 State Senate districts, was part of a partisan effort to create a malapportioned redistricting plan; was not rational, evenhanded, and in good faith; and consequently is unconstitutional.
Petitioners argue that the better approach for counties divided after 1894, such as Queens and Nassau, would be to combine such counties before rounding down, which was endorsed by the Court of Appeals as more accurate (Matter of Schneider, 31 NY2d at 432-433, 434) and used consistently by the Legislature in redistricting in 1972, 1982, and 1992. Previous to that, and in 2002 and 2012, the Legislature used the rounding down before combining method. However, petitioners contend that even if the Legislature has the discretion to switch to the rounding down before combining method, the Legislature was required to use it consistently and that using two different methods simultaneously in one year’s redistricting cannot be constitutionally justified. [6]
Respondent Skelos counters that the Legislature has flexibility in determining the number of State Senators in the State Senate; and that a different method can be used when combining counties where a county existing in 1894 was later divided, as opposed to where multiple counties constituted a single State Senate district in 1894. Consequently, respondent Skelos contends that petitioners have failed to meet their heavy burden to demonstrate that the Legislature’s methodology was not reasonable or rational.
Article III, § 5 of the New York Constitution provides this court with the power to review a statute apportioning the state into senatorial and assembly districts, for the purpose of ascertaining whether the act is in compliance with the New York Constitution (see Matter of Sherrill v O’Brien, 188 NY 185, 195 [1907]). Petitioners argue, wrongly, against the applicability of the beyond a reasonable doubt standard in this proceeding, though they claim to meet that standard in any event. It is the settled law of this state that statutes are presumed to be *435 constitutional, and the standard of beyond a reasonable doubt is the one to be applied (Matter of Fay, 291 NY 198, 206-207 [1943]). The Court of Appeals explained in Matter of Wolpoff v Cuomo (80 NY2d 70, 78 [1992]):
“A strong presumption of constitutionality attaches to the redistricting plan and we will upset the balance struck by the Legislature and declare the plan unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and that until every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation has been found impossible (Matter of Fay, 291 NY 198, 207)” (internal quotation marks omitted).
A court should not declare a law to be unconstitutional unless it is clear that the statute is such, and the court should resolve all doubts in favor of the law’s being constitutional (Johnson v City of New York, 274 NY 411, 430 [1937]). Further, as the Court of Appeals noted in Matter of Sherrill v O’Brien (188 NY at 198):
“Where by the Constitution some discretion is vested in the legislature this court cannot inquire into the motives of the legislators in exercising such discretion and voting for a particular plan of apportionment and it cannot inquire into the relative merits of several plans to choose from which requires the exercise of sound judgment and judicial discretion. But if the legislature under the assumption of an exercise of discretion does a thing which is a mere assumption of arbitrary power, and which, in view of the provisions of the Constitution, is beyond all reasonable controversy, a gross and deliberate violation of the plain intent of the Constitution and a disregard of its spirit and the purpose for which express limitations are included therein, such act is not the exercise of discretion but a reckless disregard of that discretion which is intended by the Constitution. Such an exercise of arbitrary power is not by authority of the People.”
The Court of Appeals, in Matter of Schneider v Rockefeller (31 NY2d at 432-433), clearly affirmed the constitutionality of using the combining before rounding down method, noting that it more accurately reflected increases in population of the territory of the original county. At the same time, while the Court of Appeals found that the rounding down before combining method had not been accorded “constitutional stature,” it did not find *436 it to be unconstitutional. (Id. at 432.) Rather, the Court of Appeals recognized that the Legislature must be given “some flexibility in working out the opaque intricacies of the constitutional formula for readjusting the size of the Senate.” (Id.)
Although this court finds disturbing the Legislature’s use of one method for Queens and Nassau Counties and a different method for Richmond and Suffolk Counties, petitioners have not sustained their heavy burden of demonstrating beyond a reasonable doubt that the Legislature has acted unconstitutionally. The Appellate Division has instructed:
“A finding of unconstitutionality should not be lightly undertaken by courts of first instance. ‘A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless such conclusion is inescapable. Courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty, and where the invalidity of the act is apparent on its face’ (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, pp 312-313, and the cases cited thereat).” (Comiskey v Arlen, 55 AD2d 304, 307 [2d Dept 1976], affd 43 NY2d 696 [1977].)
Though portions of the New York Constitution must be interpreted consistently where possible (Settle v Van Evrea, 49 NY 280, 284-285 [1872]), as petitioners concede the challenge here is not to inconsistent interpretations of different parts of the New York Constitution but rather to the application of one portion. Justice Scalia stated that the meaning of words within a law cannot be given different meanings in different factual contexts (United States v Santos, 553 US 507, 522-523 [2008]), which is analogous to the constitutional interpretation at issue here, but it is not for this court to declare the Legislature’s act unconstitutional under these circumstances. This is particularly so where the Court of Appeals had not declared constitutionally infirm the rounding down before combining method (see Matter of Schneider v Rockefeller, 31 NY2d at 432, 434) and has directed that the Legislature must be afforded some flexibility with the formula at issue. (Id. at 432.)
Finally, a different conclusion is not compelled by petitioners’ contention that information was withheld from the public in order to thwart public comment regarding the plan by the Legislature as to how it would reapportion the number of State Senate seats. Even assuming that the contention is true, by *437 petitioners’ own acknowledgment the mathematical formula to calculate the size of the Senate is not a matter upon which public opinion should have any influence (see petitioners’ mem at 26).
Accordingly, by this court’s separate decision, order, and judgment, dated April 12, 2012,[7] the petition has been denied, and this court has declared that the formula prescribed in article III, § 4 of the New York Constitution does not forbid New York from increasing the size of the New York State Senate to 63 seats in 2012. In respondent Skelos’ answer to the petition, he asks this court to dismiss petitioners’ claims. That would be inappropriate, but rather, upon a denial of the petition, the court has to issue a declaration opposite to the one sought by petitioners (see Matter of A. J. McNulty & Co., Inc. v Greenberger, 82 AD3d 506, 506-507 [1st Dept 2011]).

. Respondents Cuomo and Duffy answered the petition, but their attorney did not appear for oral argument on the return date of the petition.

. Respondent New York State Board of Elections also did not appear for oral argument. In a letter to the court, respondent New York State Board of Elections stated that it will not be participating and takes no position on the merits of this proceeding.

. County based criteria in article III, § 4 had been found to violate the one person, one vote principle, but the formula to add State Senate districts largely survived (see Matter of Orans, 15 NY2d 339, 351-352 [1965]).

. The petition sets forth the pertinent figures. The state’s 2010 population of 19,378,102 divided by 50 yields a quotient or ratio for the year of 387,562. Queens’ population, according to the 2010 census, of 2,230,722, when divided by 387,562 yields 5.76, which is rounded down to 5 full ratios. The Nassau County population in the 2010 census of 1,339,532, when divided by 387.562 yields 3.46, which is rounded down to 3 full ratios. Consequently rounding down before combining yields a total of 8 full ratios. On the other hand, the combined populations of Queens and Nassau of 3,570,254 divided by 387.562 yields 9.21 or 9 full ratios. Because the original combined county had one State Senate district, Queens/Nassau would require seven or eight additional districts, depending on the method used.

. According to a memorandum to respondent Skelos, the combined population of Richmond and Suffolk Counties in 2010 of 1,962,080 divided by 387.562 yields 5.06, or 5 full ratios when combined before rounding down. In contrast, according to the affidavit to Todd Breitbart, who directed staff work for the Minority Leaders of the State Senate from 1980 to 2005, Richmond’s 2010 population of 468,730 divided by 387,562 yields 1.2, or 1 full ratio, while Suffolk’s population of 1,493,350 divided by 387,562 yields 3.85, or 3 full ratios, for a total of 4 if the rounding down before combining method is used. Because Richmond and Suffolk were originally one State Senate district, *434 Richmond/Suffolk’s current population would require three or four additional districts depending on the method used.

. Consistent use of the rounding down before combining method would require 12 additional districts, yielding a total 62 State Senate districts, while consistent use of the combining before rounding down method would require 14 additional districts, yielding a total of 64 State Senate districts. The only other county requiring an increase in the number of seats is Westchester County, but the parties do not dispute the number for that county no matter which method is used.

. Pursuant to article III, § 5 of the New York Constitution, which mandates that a court give precedence to a proceeding involving reapportionment over all other actions and proceedings, this court put aside all of its other cases for approximately a week after submission of this proceeding in order to render its decision in the proceeding.