[969 NE2d 754, 946 NYS2d 536]

DANIEL MARKS COHEN et al., Appellants, v ANDREW M. CUOMO, as Governor of the State of New York, et al., Respondents.

Argued April 26, 2012; decided May 3, 2012

**POINTS OF COUNSEL**

*Cuti Hecker Wang LLP*, New York City (*Eric J. Hecker, John R. Cuti, Alexander Goldenberg* and *Julie B. Ehrlich* of counsel), for appellants. The New York State Senate majority's 63-seat Senate plan violates article III, § 4 of the New York Constitution. (*Settle v Van Evrea*, 4 Sickels 280; *District of Columbia v Heller*, 554 US 570; *Adarand Constructors, Inc. v Pena*, 515 US 200; *Good Samaritan Hospital v Shalala*, 508 US 402; *Matter of Schneider v Rockefeller*, 31 NY2d 420; *Burns v Richardson*, 384 US 73; *Matter of O'Shea v Board of Assessors of Nassau County*, 8 NY3d 249; *Metropolitan Taxicab Bd. of Trade v New York City Taxi & Limousine Commn.*, 18 NY3d 329; *Matter of Orans*, 15 NY2d 339; *Matter of Fay*, 291 NY 198.)

*Jones Day, Washington, D.C.* (*Michael A. Carvin* and *John M. Gore* of counsel), *Jones Day*, New York City (*Todd R. Geremia* of counsel), and *Lewis & Fiore* (*David Lewis* of counsel) for Dean G. Skelos, respondent. I. The 63-seat New York State Senate plan is a reasonable exercise of the Legislature's discretion. (*Matter of Schneider v Rockefeller*, 31 NY2d 420; *Matter of Wolpoff v Cuomo*, 80 NY2d 70; *Matter of Fay*, 291 NY 198; *Matter of Orans*, 15 NY2d 339; *Reynolds v Sims*, 377 US 533; *Matter of Walton v New York State Dept. of Correctional Servs.*, 13 NY3d 475; *Matter of Walsh v Katz*, 17 NY3d 336; *Affronti v Crosson*, 95 NY2d 713; *Dalton v Pataki*, 5 NY3d 243; *Port Jefferson Health Care Facility v Wing*, 94 NY2d 284.) II. Petitioners' ad hominem and irrelevant allegations are unavailing. (*Matter of Wolpoff v Cuomo*, 80 NY2d 70; *Matter of Sherrill v O'Brien*, 188 NY 185; *Gaffney v Cummings*, 412 US 735; *Rodriguez v Pataki*,

308 F Supp 2d 346; *Matter of Fay*, 291 NY 198; *Affronti v Crosson*, 95 NY2d 713; *Dalton v Pataki*, 5 NY3d 243; *Brown v Thomson*, 462 US 835; *Voinovich v Quilter*, 507 US 146; *Matter of Schneider v Rockefeller*, 31 NY2d 420.)

*Graubard Miller*, New York City (*Elaine Reich* and *C. Daniel Chill* of counsel), for Sheldon Silver, respondent. Inasmuch as chapter 16 of the Laws of 2012 contains a severability clause, if the Court invalidates the 63-seat New York State Senate plan, relief should be tailored in a manner that will not affect the New York State Assembly districts enacted as part of the same legislation. (*Matter of Hynes v Tomei*, 92 NY2d 613; *People v Tremaine*, 252 NY 27; *Matter of Town of Middletown*, 82 NY 196; *Matter of Henry v Noto*, 74 AD2d 604, 50 NY2d 816; *People ex rel. Alpha Portland Cement Co. v Knapp*, 230 NY 48.)

*Emery Celli Brinckerhoff & Abady LLP*, New York City (*Richard D. Emery* and *Adam R. Pulver* of counsel), for New Roosevelt Foundation, Inc., amicus curiae. I. The combination of methods to determine the size of the New York State Senate served one purpose: to add an *upstate* district that would not be presumptively unconstitutional. (*Brown v Thomson*, 462 US 835.) II. The combination of methods to determine the size of the New York State Senate was part of a broader bad faith scheme to infringe on the voting rights of downstate New Yorkers. (*Matter of Schneider v Rockefeller*, 31 NY2d 420; *Reynolds v Sims*, 377 US 533; *Abate v Mundt*, 25 NY2d 309, 403 US 182; *Davis v Mann*, 377 US 678; *Larios v Cox*, 300 F Supp 2d 1320, 542 US 947; *Hadley v Junior College Dist. of Metropolitan Kansas City*, 397 US 50; *Hulme v Madison County*, 188 F Supp 2d 1041; *Moore v Itawamba County, Miss.*, 431 F3d 257; *Rodriguez v Pataki*, 308 F Supp 2d 346, 543 US 997; *Davis v Bandemer*, 478 US 109.) III. There are stark consequences for the voting rights of racial and ethnic minorities. (*Allen v State Bd. of Elections*, 393 US 544.)

*Gibson, Dunn & Crutcher LLP*, New York City (*Jim Walden* and *Anne Champion* of counsel), for Common Cause New York, amicus curiae. I. Redistricting processes are uniquely subject to political manipulation in New York. II. This Court should not turn a blind eye to the "process" that resulted in Laws of 2012, chapter 16 when evaluating the Supreme Court's decision. (*Larios v Cox*, 300 F Supp 2d 1320, 542 US 947; *Hulme v Madison County*, 188 F Supp 2d 1041.) III. Laws of 2012, chapter 16 is unconstitutional and the Supreme Court should be reversed.

*(Matter of Schneider v Rockefeller*, 31 NY2d 420; *Larios v Cox,* 300 F Supp 2d 1320; *Corbett v Sullivan*, 202 F Supp 2d 972; *Vieth v Pennsylvania*, 195 F Supp 2d 672; *WMCA, Inc. v Lomenzo*, 377 US 633; *Matter of Fay*, 291 NY 198; *Karcher v Daggett*, 462 US 725; *Reynolds v Sims*, 377 US 533; *Board of Estimate of City of New York v Morris*, 489 US 688; *Roman v Sincock*, 377 US 695.)

### OPINION OF THE COURT

Per Curiam.

Petitioners commenced this special proceeding seeking a declaration that chapter 16 of the Laws of 2012, insofar as it expands the size of the New York State Senate from 62 to 63 districts, is unconstitutional. Specifically, they argue that the Legislature's failure to apply a consistent method of calculating the number of Senate seats due to population growth throughout the state is arbitrary and violates article III, § 4 of the New York State Constitution. We find that petitioners have failed to satisfy their heavy burden of establishing the unconstitutionality of this legislation and we therefore affirm.

This dispute arises out of the process of adjusting representation in the State Senate whereby the Legislature uses the historical, constitutionally prescribed "ratio" process to determine the required number of Senate seats. The New York Constitution of 1894 established a minimum of 50 State Senate districts and set forth a method of determining whether the number of seats is to be increased based on population shifts or increases as indicated by the census (*see* NY Const, art III, § 4). The initial step in this process is to divide the population of the State's citizens by 50, resulting in the applicable "ratio" figure (*see* NY Const, art III, § 4).[1] Any county that has at least three "full ratio[s]," or six percent of the state's population, is then allocated a Senate seat for each full ratio (*see* NY Const, art III, § 4). If the number of seats so assigned is greater than the

---

1. "The ratio for apportioning senators shall always be obtained by dividing the number of inhabitants . . . by fifty, and the senate shall always be composed of fifty members, except that if any county having three or more senators at the time of any apportionment shall be entitled on such ratio to an additional senator or senators, such additional senator or senators shall be given to such county in addition to the fifty senators, and the whole number of senators shall be increased to that extent" (NY Const, art III, § 4).

number of seats assigned to that county in the Constitution of 1894, the increase is added to the original 50 Senate seats so that the "whole number of senators" is increased accordingly (*see Matter of Schneider v Rockefeller*, 31 NY2d 420, 431-432 [1972] [internal quotation marks omitted]).[2]

Difficulties are presented in determining the proper ratio for counties that were divided after 1894 (resulting in the creation of counties that did not then exist) and for counties that were combined in 1894 within a single Senate district. Article III, § 4 does not provide any specific guidance on how to address these situations. The Legislature has, in the past, employed two different methods. The populations of the counties at issue can be combined and then divided by the ratio figure to get a number that is then rounded down to the nearest full ratio ("combining before rounding down"). That figure is then compared to the number of Senate seats that were allotted to that district in 1894 for purposes of determining any increase. Another way is to divide the population of each county by the ratio figure, round the resulting number for each county down to the nearest full ratio and then combine the full ratios to get the number of Senate seats ("rounding down before combining") for purposes of comparison to the number of seats allocated in 1894.

Here, we are concerned with the Legislature's treatment of Queens and Nassau Counties on the one hand, and Richmond and Suffolk Counties on the other. In 1894, the territory that is currently Queens and Nassau was one county—Queens. Richmond and Suffolk were each counties at that time, but were organized into a single Senate district. For purposes of the current redistricting process, the Legislature chose to use one method—rounding down before combining—to determine the full ratio for Queens and Nassau Counties. It chose to use the other method—combining before rounding down—to determine the full ratio for Richmond and Suffolk Counties. Based on 2010 census population statistics, consistent application of the rounding down before combining method would have resulted in 62 Senate districts, while consistent use of the combining before

---

**2.** As we have previously observed, this method is solely for the purpose of determining the size of the State Senate (*see Schneider*, 31 NY2d at 431 n 5). When the constitutional provision was enacted in 1894, it was also used to allocate Senate seats to counties, but since the advent of the "one person, one vote" rule (*Reynolds v Sims*, 377 US 533 [1964]), seats cannot be allocated on a county-by-county basis. Thus, the drawing of districts and apportioning of Senate seats is a process completely separate from determining the number of seats (*see e.g. WMCA, Inc. v Lomenzo*, 377 US 633 [1964]).

rounding down method would have resulted in 64 Senate districts. Petitioners argue that respondents manipulated the process for political purposes in order to reach a 63-seat Senate.

Supreme Court found that petitioners failed to meet their burden of establishing the unconstitutionality of the redistricting plan (35 Misc 3d 478 [2012]). Petitioners appealed directly to this Court as of right pursuant to CPLR 5601 (b) (2), and we now affirm.

Petitioners acknowledge that we have, in the past, recognized each of the methods of calculation at issue. They maintain, however, that it violates article III, § 4 of the New York State Constitution to use different methods for different parts of the state in the same adjustment process.

In *Schneider*, we addressed the constitutionality of the procedure used by the Legislature to determine the number of senators that should be allotted. In that case, following the 1970 census, the Legislature combined the populations of Queens and Nassau Counties, divided by the ratio figure and then rounded down, resulting in an increase of eight senators (*see* 31 NY2d at 432). The petitioners had advocated for the rounding down before combining system, which would have resulted in only seven additional senators.

We found that the combining before rounding down "procedure followed by the Legislature [was] valid and [did] not transgress any constitutional provision" (*Schneider*, 31 NY2d at 432). We also observed that the other procedure—rounding down before combining—had been used in prior redistricting (*see id.*). Instead of deciding between these procedures, we held that "the Legislature must be accorded some flexibility in working out the opaque intricacies of the constitutional formula for readjusting the size of the Senate" (*id.*). We went on to say that, where a county had been divided subsequent to 1894, the process of combining before rounding down "more accurately reflects increases in the population of the territory of the original county—the very basis from which adjustments to the whole number of senators is made. This system is, therefore, consonant with the broad historical objectives underlying the provision for increasing the size of the Senate" (*id.* at 432-433).

It is well settled that acts of the Legislature are entitled to a strong presumption of constitutionality

> "and we will upset the balance struck by the Legislature and declare the [redistricting] plan unconstitutional ' "only when it can be shown beyond

reasonable doubt that it conflicts with the funda-
mental law, and that until every reasonable mode of
reconciliation of the statute with the Constitution
has been resorted to, and reconciliation has been
found impossible," ' " the statute will be upheld
(*Matter of Wolpoff v Cuomo*, 80 NY2d 70, 78 [1992],
quoting *Matter of Fay*, 291 NY 198, 207 [1943]).

The rationale proffered by respondents for their choice of
methods is that they opted to treat Nassau County—which did
not exist in 1894 and which now has the population to warrant
three full ratios—as if it had been a county in existence in 1894.
Therefore, the method of rounding down before combining was
used for Nassau and Queens to determine the Senate seats at-
tributable to each county. For Richmond and Suffolk Counties,
which both existed in 1894 and were combined into a single
district at that time, the Legislature continued its practice of
using the method of combining before rounding down.

It is not our task to address the wisdom of the methods
employed by the Legislature in accomplishing its constitutional
mandate. Rather, here, we consider only whether the methods
chosen amount to "a gross and deliberate violation of the plain
intent of the Constitution and a disregard of its spirit and the
purpose for which express limitations are included therein"
(*Matter of Sherrill v O'Brien*, 188 NY 185, 198 [1907]). Despite
petitioners' assertions, we cannot say that consistent applica-
tion of one method of calculation is required, given the
Constitution's silence on this issue and our recognition that the
Legislature must be accorded a measure of discretion in these
matters. Under these circumstances, petitioners have not met
their burden of demonstrating that the use of two constitution-
ally adequate means of determining the number of Senate seats,
in the course of addressing two discrete historical contexts, is
unconstitutional.

Accordingly, the judgment of the Supreme Court should be af-
firmed, without costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ,
SMITH, PIGOTT and JONES concur in per curiam opinion.

Judgment affirmed, without costs.